**HOME FEDERAL SAVINGS AND LOAN ASSOCIATION OF ALGONA, Iowa, Appellee,**

**v.**

**Jacqueline E. and Richard E. CAMPNEY, Appellants.**

**No. 83–1189.**

Supreme Court of Iowa.

Nov. 14, 1984.

Rehearing Denied Dec. 17, 1984.

Mark S. Soldat, Algona, for appellants.

Joseph J. Straub, Algona, for appellee.

Considered by UHLENHOPP, P.J., and McGIVERIN, LARSON, CARTER, and WOLLE, JJ.

McGIVERIN, Justice.

Defendants Jacqueline E. and Roger E. Campney appeal from a judgment for plaintiff Home Federal Savings and Loan Association of Algona, Iowa, in a mortgage foreclosure action that involves a due-on-sale clause in the mortgage. We affirm and remand the case to permit the trial court to rule on a still pending motion.

The following issues are presented for our review: 1) whether the proper interpretation of the word "shall" in the due-on-sale clause requires judgment for defendants; 2) whether the due-on-sale clause is unconscionable; 3) whether application of the doctrine of reasonable expectations requires judgment for defendants; 4) whether plaintiff actually exercised the option to accelerate payment of the mortgage balance that the due-on-sale clause purports to give; 5) whether the forfeiture of a sale contract for the mortgaged property by the defendants' vendees operated retroactively to cancel the operation of the due-on-sale clause; 6) whether plaintiff waived its right to bring the foreclosure action, or should be estopped from doing so; 7) whether the trial court acted permissibly in making its award of attorney fees to plaintiff; and 8) whether one of defendants' witnesses should be deemed an expert witness within the meaning of Iowa Code section 622.72 (1983) and compensated accordingly.

This being an equity case, our review is de novo. Iowa R.App.P. 4. Upon consideration of the record, we find the facts to be as follows.

Prior to November 17, 1977, defendants, who are husband and wife, contacted plaintiff about financing the purchase of a house in Algona which Richard Campney's relatives had recently inherited. The house was in poor condition, and defendants contemplated a loan not only to purchase it, but also to make extensive repairs. Once repairs were completed, they planned to rent it out or possibly to move into it themselves if they lost their lease on the farm they were renting at that time.

Clay Mowers, then executive vice-president of plaintiff, discussed with defendants such matters as the amount of the loan they were seeking, the interest rate, and the monthly payments. Although it seems to have been obvious to defendants from the first that the loan would be secured by a mortgage on the property to be purchased, apparently it was not mentioned to

them in the course of these discussions that the mortgage would contain a due-on-sale clause.

Defendants decided to purchase the property and applied for a loan in the amount of $21,650, of which $18,500 was for the purchase of the property and the remainder for remodeling and repairs. Plaintiff approved the application and requested defendants to designate an attorney to represent them in connection with the purchase of the property. Defendants retained Vern McClure, an Algona lawyer, as their attorney. He wrote a title opinion letter to defendants prior to the closing and issued an Attorney's Certificate of Title thereafter, but was not requested by defendants to be present at the closing.

The closing took place on November 17, 1977. Present were defendants, Sandra Wiener (a vice-president of plaintiff), and several of Mr. Campney's relatives. The closing took a little over an hour, and during that time defendants had the opportunity to read each instrument they signed, including the mortgage, prior to signing it. However, defendants admit that they did not read the mortgage before signing. Mrs. Weiner answered various questions that defendants asked her, but there was no mention or discussion of a due-on-sale clause in the mortgage.

The mortgage signed by defendants contained a due-on-sale clause as its paragraph 17, which reads: "This mortgage shall become due and payable forthwith at the option of the mortgagee if the mortgagor shall convey away said premises or if the title thereto shall become vested in any other person or persons in any manner whatsoever."

After taking possession of the house, defendants spent several months making renovations and repairs. When the work was completed, they tried without success to rent the property. In the fall of 1978, they listed it for sale. They received no satisfactory offers and reduced their price in the spring of 1979. Shortly thereafter, they entered into negotiations with Bruce and Laurie Moe, which culminated on June 27, 1979 with the signing of an agreement or contract to sell the house to them for $30,000 on a five-year balloon contract at 10 percent interest per year.

Roger Long, the realtor who handled the sale of the property to the Moes, told Richard Campney several weeks before the sale that, because of the due-on-sale clause in the mortgage, defendants should consult with the mortgagee (plaintiff) before selling the property. Long warned Campney that plaintiff might, after the sale, declare the entire mortgage balance due and payable, or might instead request a raising of the mortgage interest rate in exchange for not doing so. Campney expressed his view to Long that the due-on-sale clause was illegal and unenforceable, and that in the event of sale plaintiff could neither accelerate payment of the mortgage balance nor request an increase in the interest rate. Rod Ricklefs, a colleague of Long's who had recently attended a seminar on the legality of due-on-sale clauses, also discussed the enforceability of the clause with Campney.

Plaintiff learned of the sale to the Moes from Mrs. Jacqueline Campney the day after the sale contract was signed. Mrs. Weiner, who had presided at the closing in 1977, advised Mrs. Campney to talk to Mr. Mowers about the mortgage. Neither of defendants did so, and on July 9, 1979, Mowers wrote to them regarding the effect of the due-on-sale clause. In his letter he offered defendants the choice of either paying off the entire mortgage balance or consenting to raise the interest on it from the original 9 percent to 11 percent per year.

There followed a series of letters in which plaintiff reiterated its demand for either payment in full or an increase in the interest rate. Defendants refused to agree to either. On August 30, 1979, plaintiff filed its petition for foreclosure of the mortgage and its underlying note.

The petition alleged that defendants breached the terms of paragraph 17 of the

mortgage by conveying or agreeing to convey the realty to the Moes, and that plaintiff under the terms of paragraph 17 elected to declare the entire mortgage debt to be due and payable.

Defendants answered and resisted foreclosure on several grounds.

After trial, judgment for plaintiff was entered. Defendants appeal.

I. *The word "shall" in the due-on-sale clause.* As noted before, paragraph 17 of defendants' mortgage reads, "This mortgage shall become due and payable forthwith at the option of the mortgagee [Home Federal] if the mortgagor [Campneys] *shall* convey away said premises or if the title thereto shall become vested in any other person or persons in any manner whatsoever." (emphasis added). Defendants' first contention is that the proper interpretation of the emphasized "shall" requires judgment for them in this action.

Defendants maintain that the word "shall," although sometimes used to express simple futurity, ordinarily expresses obligation when, as here, it is used in the third person. Thus, defendants contend that, according to ordinary usage, the second "shall" of paragraph 17 indicates that the mortgage could not have become due upon sale unless the defendants were under an obligation to sell the mortgaged property. Because no such obligation existed, defendants contend that the due-on-sale clause was never triggered by their sale to the Moes.

Defendants used the testimony of a grammarian to make an alternative argument in this vein. Mrs. Marguerite Kalar testified for defendants that the second "shall" was ambiguous because of its location in a protasis (conditional clause). She said that it was unclear whether the word should be read as indicating an obligation or as indicating simple futurity. Defendants maintain that this ambiguity should be resolved against plaintiff as the drafter of the language.

We decline to adopt either of defendants' arguments on this issue. The purpose of contract interpretation is to ascertain the intent of the contracting parties at the time the contract was made. *See Freese v. Town of Alburnett,* 255 Iowa 1264, 1267, 125 N.W.2d 790, 792 (1964). The record shows that plaintiff intended the word "shall" to express simple futurity. Defendants, by their own admission, did not read the mortgage before signing it, and so cannot be said to have had any actual intent regarding the word "shall" in paragraph 17. The proper interpretation of this word cannot involve giving it a meaning that none of the parties in fact gave it. *Hamilton v. Wosepka,* 261 Iowa 299, 307, 154 N.W.2d 164, 168 (1967) (quoting 3 A. Corbin, Corbin on Contracts, preface (1963)).

When interpreting a contract, we seek to give effect to the language of the entire contract in accordance with its commonly accepted and ordinary meaning. *Gendler Stone Products Co. v. Laub,* 179 N.W.2d 628, 630 (1970). Words of the contract are interpreted in the context in which they are used. *Greenberg v. Alter Co.,* 255 Iowa 899, 904, 124 N.W.2d 438, 441 (1963).

In this case, although it might be maintained that the word "shall" has two commonly accepted and ordinary meanings (that of obligation and that of simple futurity), the consideration of its context is decisive. Defendants' interpretation of the word as expressing obligation would result in the triggering of the due-on-sale clause only if they conveyed the property pursuant to some obligation to do so. Plaintiff's interpretation (simple futurity) results in the triggering of the clause upon any conveyance of the property by defendants, whether or not any obligation to convey existed. It is this latter interpretation that is in fact consistent with the ordinary and usual operation and effect of a due-on-sale clause. *See Fidelity Federal Savings and Loan Association v. de la Cuesta,* 458 U.S.

141, 145, 102 S.Ct. 3014, 3016, 73 L.Ed.2d 664, 670 (1982).

We conclude that, in the context of paragraph 17, the word "shall" has the commonly accepted and ordinary meaning of expressing simple futurity. Because of this conclusion, and because defendants' signing of the sale contract with the Moes was a conveyance under Iowa law, *see Fellmer v. Gruber*, 261 N.W.2d 173, 174 (Iowa 1978), we hold that plaintiff was within its rights in invoking paragraph 17 notwithstanding the fact that defendants were under no obligation to convey the property.

II. *Unconscionability.* We next address defendants' contention that, even if paragraph 17 is interpreted in favor of plaintiff, it is unconscionable and should therefore be selectively eliminated from the mortgage. We do not agree.

A. We have said that a court considering a claim of unconscionability should examine the factors of assent, unfair surprise, notice, disparity of bargaining power, and substantive unfairness. *C & J Fertilizer, Inc. v. Allied Mutual Insurance Co.*, 227 N.W.2d 169, 181 (Iowa 1975). Consideration of these factors leads us to conclude that paragraph 17 is not unconscionable in this case.

With regard to assent, defendants point out that because they did not read the mortgage before signing it, they cannot be said to have actually assented to paragraph 17. This is true, but does not end our inquiry. In *C & J Fertilizer* we quoted Professor Llewellyn's thoughts on this problem:

"Instead of thinking about 'assent' to boiler-plate clauses, we can recognize that so far as concerns the specific, there is no assent at all. What has in fact been assented to, specifically, are the few dickered terms, and the broad type of transaction, and but one thing more. That one thing more is a blanket assent (not a specific assent) to any not unrea-

sonable or indecent terms ... which do not alter or eviscerate the reasonable meaning of the dickered terms. The fine print which has not been read has no business to cut under the reasonable meaning of those dickered terms which constitute the dominant and only real expression of agreement...."

227 N.W.2d at 175 (quoting K. Llewellyn, the Common Law Tradition—Deciding Appeals 370 (1960)).

We think this approach is reasonable and practical. The issue thus becomes whether paragraph 17 is an unreasonable or indecent term, or whether it alters or eviscerates the terms of the mortgage to which defendants specifically agreed. With regard to unreasonableness or indecency (which we understand as equivalent to the issue of substantive unfairness), much of our opinion in *Martin v. Peoples Mutual Savings and Loan Association*, 319 N.W.2d 220 (Iowa 1982), is relevant here. In *Martin* we noted that due-on-sale clauses are standard provisions, that they are not restraints on alienation, and that they serve the social and economic purpose of maximizing the number of home loans granted to first-time borrowers. In view of these facts, we do not believe that paragraph 17 is the sort of nefarious provision, inimical to the public good, that the doctrine of unconscionability is designed to invalidate. *See Casey v. Lupkes*, 286 N.W.2d 204, 208 (Iowa 1979) (evidence that terms of an agricultural lease were substantially more disadvantageous to lessor than normal agricultural lease provisions, and made the land unmarketable, would be probative on the issue of unconscionability).

Although paragraph 17 can operate to alter the terms of a mortgage by requiring accelerated payment instead of the original payment schedule, it is relevant that this is not the automatic result of the inclusion of paragraph 17 in the mortgage. If a mortgagor does not convey the realty, a due-on-sale clause can never be invoked, unlike the typical unconscionable contract provision

that alters the essence of the contract regardless of the subsequent acts of the parties. *See C & J Fertilizer*, 227 N.W.2d at 171 (narrow definition of burglary in burglary insurance policy); *Henningson v. Bloomfield Motors, Inc.*, 32 N.J. 358, 161 A.2d 69 (1960) (disclaimer of warranty).

With regard to unfair surprise, we note that although defendants may indeed have been surprised upon eventually reading paragraph 17, the surprise can hardly be called unfair. They had time to read the mortgage and ask questions about it at the closing. Before that time they were invited by plaintiff to retain counsel for the transaction, but they chose not to have their lawyer examine the mortgage for them.

It is true that plaintiff did not give defendants specific notice that the mortgage contained a due-on-sale clause. But on this record we are unwilling to impose upon plaintiff the quasi-fiduciary duty of giving notice to defendants of every provision in the mortgage that might eventually prove disadvantageous to them. Our conclusion might be different had plaintiff stated or implied that there was no due-on-sale clause in the mortgage, or if defendants had not been afforded a fair opportunity to read it and consult an attorney about it. *Cf. C & J Fertilizer*, 227 N.W.2d 169 (insured given no opportunity to read insurance policy taken out to protect him against burglary; policy later discovered to contain provision defining "burglary" very narrowly; held, burglary definition unconscionable).

In regard to disparity of bargaining power, there is no dispute that defendants were in no position to bargain with plaintiff regarding the due-on-sale clause. Moreover, because the due-on-sale clause is a standard mortgage provision, it is almost certain that defendants could not have fared any better on that score with another lender. However, even though the mortgage can be characterized as a contract of adhesion with respect to paragraph 17, this does not mean paragraph 17 is automatically unconscionable. *See Jim Hawk Chevrolet-Buick, Inc. v. Insurance Company of North America*, 270 N.W.2d 466, 468 (Iowa 1978).

█ As an example, if defendants in this case had set out to obtain an interest-free loan and mortgage, they almost surely would have been unable to obtain one from plaintiff or any other commercial lender. This fact alone would not mean that interest provisions in notes and mortgages are unconscionable. We believe that the issue of whether a given contract is one of adhesion is in the nature of a threshold issue relevant to the question of applicability of the unconscionability doctrine. As was said in *C & J Fertilizer*:

> "Standardized contracts ... drafted by powerful commercial units and put before individuals on the 'accept this or get nothing' basis, are carefully scrutinized by the courts for the purpose of avoiding enforcement of 'unconscionable' clauses."

227 N.W.2d at 180 (quoting 6A A. Corbin, Corbin on Contracts § 1376 at 21 (1963)).

█ Clearly a finding that a contract is adhesive does not require a determination of unconscionability. It merely alerts the court that the situation is one in which such a finding may be justified. *Cf.* Iowa Code section 554.2302 (1983) (Uniform Commercial Code Comment) ("The principle is one of the prevention of oppression and unfair surprise ... and not ... disturbance of allocation of risks because of superior bargaining power.") More is required to complete the case for unconscionability, and we are not satisfied that the case has been made here.

Consideration of the factors enumerated in *C & J Fertilizer* and of the policy reasons favoring due-on-sale clauses stated in *Martin*, 319 N.W.2d at 227–31, lead us to conclude that paragraph 17 is not unconscionable.

B. We have also stated that a bargain is unconscionable if it is such as no person in

his or her senses and not under delusion would make on the one hand, and as no honest and fair person would accept on the other. *Smith v. Harrison*, 325 N.W.2d 92, 94 (Iowa 1982). In view of the widespread use of due-on-sale clauses and the fact that their use by federal saving and loan associations is specifically authorized by the federal government, *see* 12 CFR § 545.8–3(f) (1982), we conclude paragraph 17 is well outside the reach of this statement of the unconscionability doctrine.

■ III. *Defendants' reasonable expectations.* Defendants next contend that, because the mortgage is at least to some extent a contract of adhesion, effect should be given to their reasonable expectations in signing it. *See Farm Bureau Mutual Insurance Co. v. Sandbulte*, 302 N.W.2d 104, 112 (Iowa 1981). We agree, but other factors must also be considered in our analysis. The doctrine of reasonable expectations will assist defendants if paragraph 17 (1) is bizarre or oppressive, (2) eviscerates terms explicitly agreed to, or (3) eliminates the dominant purpose of the transaction. *See id.*

We believe the preceding divisions suffice for discussion of (1) and (2). As regards (3), the dominant purpose of the mortgage transaction was to enable defendants to buy the house. That purpose was not affected by paragraph 17. Defendants contend strenuously that their purpose in buying the house was to sell it later at a profit. Even if this was true, paragraph 17 in no way prevented defendants from selling the property at any price they chose. *See Martin*, 319 N.W.2d at 227.

We believe that defendants had no reasonable expectations that would justify the nullification of paragraph 17. Nothing in the record before us indicates that plaintiff in any way misled or deceived defendants as to the terms of the mortgage, nor does the mortgage itself generally, or in any particular, suggest the absence of a due-on-

sale clause. Any expectations defendants had regarding the nonexistence of paragraph 17 are based on their deliberate failure to read the mortgage and cannot be characterized as reasonable. *Cf., Rodman v. State Farm Mutual Insurance Co.*, 208 N.W.2d 903, 908 (Iowa 1973) (doctrine of reasonable expectations did not invalidate insurance policy exclusion where ordinary layman would not have misunderstood extent of coverage from a reading of the policy and there were no circumstances attributable to insurer which would foster contrary expectations on part of insured who did not read policy).

■ IV. *Exercise of the option to declare mortgage balance due.* Defendants' next assignment of error is based on the fact that paragraph 17 does not automatically take effect upon conveyance or sale of the mortgaged premises. It merely gives the mortgagee the option, upon conveyance, to declare the mortgage balance due and payable. Defendants maintain that plaintiff never exercised this option and so cannot foreclose for their failure to pay the balance. Without deciding whether the letters from plaintiff to defendant after the conveyance constituted an exercise of the option, we hold that the bringing of the foreclosure action was sufficient to give defendants notice of the exercise of the option. *See Wentland v. Stewart*, 236 Iowa 661, 665, 19 N.W.2d 661, 663 (1945).

■ V. *Forfeiture of the Moe contract.* In the fall of 1980, the Moes defaulted and their interest in the sale contract they had signed with defendants for purchase of the mortgaged property was forfeited. Iowa Code ch. 656. Defendants contend that this forfeiture retroactively nullified any conveyance that may have triggered paragraph 17, and that as a consequence paragraph 17 cannot now be invoked by plaintiff. Defendants rely on the following language used by this court in a case holding that a mechanic's lien for work done on a contract vendee's land is

unenforceable against the vendor if the vendee forfeits the sale contract: "When the contract was forfeited .... the title stood in [the vendor], the same as though no contract ... had ever been entered into." *Hunt Hardware Co. v. Herzoff,* 196 Iowa 715, 718, 195 N.W. 264, 265 (1923).

We do not believe the quoted language means that the forfeiture of a sale contract operates retroactively to "untrigger" a due-on-sale clause. Both *Herzoff, id.,* and *Darragh v. Knolk,* 218 Iowa 686, 693, 254 N.W. 22, 26 (1934), make it clear that the effect of the forfeiture is to divest the vendee of his interest. This is not consistent with saying that the interest, or the instrument that created it, never existed. Any language implying the contrary in *Herzoff* is best understood as a statement unnecessary to the holding in that case.

We hold here that forfeiture of the vendees' interest in a realty sale contract has no effect on the operation of a due-on-sale clause triggered by the making of that contract.

 VI. *Waiver or estoppel by plaintiff.* Defendants next contend that because plaintiff continued to accept monthly mortgage payments from defendants after the foreclosure action was begun, plaintiff waived its right to request accelerated payment, or else should be held estopped to assert that right. We believe that both these contentions are answered by the following language from *Babb's, Inc. v. Babb,* 169 N.W.2d 211, 214 (Iowa 1969):

> One can accept partial payments of a real estate mortgage quite consistently with foreclosure. Such payments merely reduce the balance due the mortgagee. "The mortgagee cannot be penalized for the mere receipt of that to which he is, in equity and good conscience, entitled." *Jewell v. Logsdon,* 200 Iowa [1327,] 1331, 206 N.W. [136,] 138 [ (1925) ].

The record does not show that the monies received by plaintiff from defendants (including a late payment charge of $8.92 imposed in December 1981) have been used for any purpose other than the wholly permissible one of reducing the balance due on the mortgage. We, therefore, find no merit to this contention of error.

 VII. *Determination of attorney fees.* Paragraph 13 of the mortgage provided for payment by defendants of plaintiff's "statutory attorney's fee" in the event a foreclosure action was necessary. Defendants next contend that the trial court erred in its determination of the attorney fees due plaintiff.

On December 10, 1980, defendants filed an application to adjudicate law points, pursuant to Iowa R.Civ.P. 105, in which they requested that plaintiff's attorney fees be determined under Iowa Code section 625.22 (1979) as it read on the date the foreclosure action was begun. On that date, August 30, 1979, the statute provided for determination of fees on a percentage-of-recovery basis.

Plaintiff resisted defendants' application on the ground that effective on July 1, 1980, section 625.22 had been amended by 1980 Iowa Acts ch. 1182. The percentage-of-recovery system for determining fees was replaced in favor of determination of fees by the court.[1] Plaintiff contended that the amended statute, rather than the statute as it had read at the time the suit was begun, was applicable to the determination of its attorney fees.

On January 30, 1981, the court ruled that the unamended statute, providing for determination of attorney fees on a percentage-of-recovery basis, was applicable. Thereafter, on November 24, 1982, this court held in *Bankers Trust Co. v. Woltz,* 326 N.W.2d 274, 277–78 (Iowa 1982), that

---

1. Iowa Code section 625.22, as amended, now provides in relevant part:
 When judgment is recovered upon a written contract containing an agreement to pay an attorney's fee, the court shall allow and tax as a part of the costs a reasonable attorney's fee to be determined by the court.

where a written contract provides for an award of attorney fees, the determination of fees is made according to the statute in force at the time judgment is entered in the action in question.

Relying on *Woltz*, plaintiff filed a post-trial motion requesting that its attorney fees be determined in accordance with the amended section 625.22 in force at that time, which provided for determination of the fees by the court. The court concluded that it was bound by its prior rule 105 adjudication [2] only as to plaintiff's attorney fees incurred up to the time of that adjudication. With regard to the fees incurred since that time, the court concluded it was free to apply the amended statute, pursuant to our decision in *Woltz*. The court awarded plaintiff a total of $2,500 in attorney fees.

On appeal, defendants contend that the court was wholly bound, with respect to its fee determination, by its prior rule 105 adjudication and had no power to modify that ruling by restricting it to the determination of only the fees plaintiff had incurred up to the time of the ruling. We disagree.

■ Under defendants' interpretation of rule 105, a change in the award of attorney fees to bring the award in conformity with *Woltz* could be accomplished only on appeal. This is not the meaning of the rule. *Allied Mutual Casualty Co. v. Long*, 252 Iowa 829, 831–32, 107 N.W.2d 682, 683 (1961). A rule 105 adjudication is a guide by which the parties to an action may determine their conduct in future proceedings. *Id.* We are unwilling to construe the rule as barring modification of a prior adjudication of law points in order to conform to subsequent decisions of this court while the case is pending. *Cf. Baty v. Binns*, 354 N.W.2d 777, 779–80 (1984) (trial court, in personal injury action, allowed to correct its findings of fact and

conclusions of law while case was still pending in order to conform to doctrine of comparative negligence adopted in *Goetzman v. Wichern*, 327 N.W.2d 742 (Iowa 1982) shortly after trial).

We hold that rule 105 did not preclude the trial court from taking the action it did with respect to plaintiff's attorney fee award. We do not reach the issue of whether that action was substantively correct because error on that basis has not been urged.

■ Defendants also contend that the award should be vacated because it is without evidentiary support in the record. It is not necessary for a court to hear evidence on a motion for award of attorney fees, because the court is presumed to be an expert on what are reasonable fees. *See Nelson v. Iowa State Highway Commission*, 253 Iowa 1248, 1256, 115 N.W.2d 695, 699 (1962). We have required evidence on the matter only when the award was made pursuant to a statute which, in our opinion, contemplated litigation of the issue. *See, e.g., Maday v. Elview-Stewart Systems Co.*, 324 N.W.2d 467, 470 (Iowa 1982) (award made pursuant to Iowa Code § 91A.8). The court need not have received evidence on the award of attorney fees. The court heard the trial and was aware of the work plaintiff's counsel had done on the case. There is no error here.

■ VIII. *Status and compensation of Mrs. Kalar.* As noted in division I, Mrs. Marguerite Kalar, a retired teacher, testified for defendants regarding the interpretation of the word "shall" in paragraph 17 of the mortgage. Defendants twice moved the trial court to declare Mrs. Kalar an expert witness and to award expert witness fees to her pursuant to Iowa Code section 622.72 (1983). Apparently no ruling on the motion was ever made. Accordingly, we remand the case for the sole purpose of permitting the trial court to rule on the

---

**2.** Iowa R.Civ.P. 105 provides that a ruling made pursuant to it "shall not be questioned on the

trial of any part of the case of which it does not dispose."

motion. We do not suggest what the ruling should be.

We have considered all of defendants' contentions, whether discussed herein or not, and find them to be without merit. The judgment of the trial court is, therefore, affirmed and the case remanded for ruling on defendants' motion above stated.

AFFIRMED.