Betty L. BESTA, Appellant,

v.

BENEFICIAL LOAN CO. OF IOWA; et al., Appellees.

BENEFICIAL LOAN COMPANY OF IOWA, Appellee,

v.

Betty L. BESTA, Appellant.

No. 87–1801.

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1988.

Decided Aug. 25, 1988.

Kenneth F. Dolezal, Cedar Rapids, Iowa, for appellant.

Roger W. Stone, Cedar Rapids, Iowa, for appellees.

Before JOHN R. GIBSON and BEAM, Circuit Judges, and BENSON,[*] District Judge.

BEAM, Circuit Judge.

Betty L. Besta appeals from an order of the district court dismissing her claim that her loan agreement with Beneficial Finance Company of Iowa (BFC) is unconscionable. We reverse.

**Background**

The loan at issue (Loan II) was written on May 2, 1983, and in part refinanced an earlier loan made in 1981 (Loan I). The loans were structured in the following manner:

| | Loan I | Loan II |
|---|---|---|
| Amount Requested | $1000.00 | $ 500.00 |
| Cash Advanced | $1249.33 | $1442.23[1] |
| Insurance Premiums | $ 214.02 | $ 972.00 |
| Recording Fees | $ 15.00 | $ 184.00 |
| Loan Principal | $1478.35 | $2598.23 |
| Length of Loan | 36 months | 72 months |
| Annual Percentage Rate | 24% | 28.09% |
| Amount Per Payment | $ 58.00 | $ 75.00 |
| Amount of Interest to be paid · | $ 609.65 | $2801.77 |
| Total Amount to Repay | $2088.00 | $5400.00 |

David Mootz, an employee of BFC, negotiated both loans.

Besta made 18 of the 36 payments due on Loan I. At that time, she needed $500.00 to finish her basement. She contacted Dial Finance, who, in turn, called BFC to check on Besta's BFC loan.

David Mootz asked Dial Finance how much money Besta was requesting. Mootz then telephoned Besta at her home and "explained to her that if she wanted to come to Beneficial, that, you know, [he would] be glad to see if [he] could work up something for her to get her the money she needed." Record at 35. All of the terms for Loan II were discussed over the telephone, and on May 2, 1983, Besta went to BFC to sign the prepared documents. Dial Finance never responded to Besta with regard to her loan inquiry.

Besta was laid off from her job soon after Loan II was made. She fell in arrears. To prevent BFC from foreclosing on her assets, she filed this rescissionary action. BFC counterclaimed for the amount then owing—$2986.86. The district court found in BFC's favor on both claims.

**Standard of Review**

Iowa courts review unconscionability determinations de novo. *Home Fed.Sav. & Loan Ass'n v. Company*, 357 N.W.2d 613, 615 (Iowa 1984). Unconscionability is something that courts usually find as a matter of law. Iowa Code Annot. § 537.5108(1). At the same time, it is evident that factual findings must be made in order to determine whether or not the transaction at issue meets the statutory standard. Such cases present mixed questions of law and fact. *See Hill v. Blackwell*, 774 F.2d 338, 343 (8th Cir.1985); *see also Mullan v. Quickie Aircraft*, 797 F.2d 845, 850 (10th Cir.1986).

 On mixed questions of law and fact, at least concerning federal law, this circuit exercises plenary review of the legal conclusion. *See Hill*, 774 F.2d at 343. When reviewing an interpretation of state law by a resident federal judge, however,

---

1. $877.76 of this amount was the unpaid balance from Loan I. It is unclear from the record whether this amount reflects any credit given for refund of any part of the $214.02 in insurance premiums charged in conjunction with Loan I even though, as indicated *infra*, only one half of the payments under Loan I had come due at the time of the refinancing.

we accord substantial deference to the interpretation unless we believe it does not correctly apply local law, or unless the judge has not expressed adequate reasons for the ruling on the state law question. *Kansas State Bank v. Citizens Bank*, 737 F.2d 1490, 1496 (8th Cir.1984). Here, the judge did not supply us with his reasoning on what we believe to be the relevant question. We, therefore, believe that our deference must yield to reasoning we find more compelling. *See id.*

**The State Law Question**

Katherine Keest, an expert witness, presented undisputed testimony that the Besta loan if paid over 36 months instead of 72 months would have cost Besta a total of $2541.88 instead of $5400.00—and her installment payments would have been $5.00 per month *less.* The question before us, then, is whether Iowa law was correctly applied when the district court concluded that it was not unconscionable for BFC to arrange to finance Loan II over a six-year period without informing Besta of a more advantageous three-year option.

The district court concluded that all of the insurance charges under Loan II were lawful. For a six-year loan, the court was correct. However, the thrust of Keest's testimony—she was a consumer lending specialist—was that lending $1442.23 over six years, with the insurance premiums necessary for a six-year loan, was an arrangement no fair person would propose. Record at 437.

Her testimony was that the longer the loan period, the higher the insurance premiums. By adding the increased premiums to the cash advanced, BFC propelled the loan principal to an ever higher amount, and in this case, made the principal amount exceed $2000.00.

With the loan principal greater than $2000.00, the lender could then take a valid mortgage on the borrower's home. (Iowa

Code Annot. § 537.2307 corroborates Keest's testimony on this point.) The real estate mortgage allegedly necessitated the charging of additional recording and other fees with regard to the security taken.[2] These fees were, in turn, added to the principal amount which then required the payment of still higher insurance premiums. Interest, of course, runs for six years on this entire amount.

The following chart illustrates the effect of Loan II being stretched to six years when compared to the terms calculated by Keest under a three-year agreement (Exh. 69). The terms for Loan I, a BFC loan that was for three years, substantiates the accuracy of Keest's figures.

| | Loan I | Loan II | Exh. 69 |
|---|---|---|---|
| Amount Requested | $ 1000.00 | $ 500.00 | $ 500.00 |
| Cash Advanced | $ 1249.33 | $ 1442.23 | $ 1444.46[3] |
| Disability Insurance | $ 79.34 | $ 275.40 | $ 96.59 |
| Life Insurance | $ 40.72 | $ 210.60 | $ 49.57 |
| Household Contents Insurance | $ 93.96 | $ 486.00 | $ 114.38 |
| Recording Fees | $ 15.00 | $ 184.00 | $ ———— |
| Amount Financed | $ 1478.35 | $ 2598.23 | $ 1705.00 |
| Annual Percentage Rate | 24% | 28.09% | 28.09% |
| Number of Payments | 36 | 72 | 36 |
| Amount Per Payment | $ 58/mo. | $ 75/mo. | $ 70.61/mo. |
| Amount of Interest to Pay | $ 609.65 | $ 2801.77 | $ 836.88 |
| Total Amount to Repay | $ 2088.00 | $ 5400.00 | $ 2541.88 |

**Unconscionability**

The Iowa Consumer Credit Code permits a court to refuse enforcement of an unconscionable agreement or to enforce the agreement without the unconscionable terms. Iowa Code Annot. § 537.5108(1). The contract must have been unconscionable at the time it was made. *Id.* To aid in making this determination, a court may consider the setting, purpose, and effect of the agreement. *Id.* at § 537.5108(3). Additionally, the existence and amount of separate charges for insurance are to be considered by a court when testing the agreement for unconscionability. *Id.* at § 537.5108(4)(d). A court is also to consider other indicia of unconscionability as ap-

---

**2.** The total of the recording and other fees under Loan II was $184.00. Under Loan I, BFC also took and filed a mortgage on the real estate, which mortgage was apparently invalid under Iowa law. The recording and other fees under Loan I were, however, only $15.00.

**3.** This amount also includes the unpaid principal from Loan I.

plicable. *See id.* at § 537.5108(4).[4]

■ Iowa courts have considered as factors unfair surprise, lack of notice, disparity of bargaining power and substantive unfairness. *Campney,* 357 N.W.2d at 618. Courts find that a bargain is unconscionable "if it is such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Smith v. Harrison,* 325 N.W.2d 92, 94 (Iowa 1982). While we think Loan II was substantively unfair because there was no reasonable basis for writing the loan for a six-year period, we need not base our decision on such a finding. Instead, we hold that not telling Besta that she could have repaid the same loan with lower monthly payments in one-half the time deprived her of fair notice and amounted to unfair surprise—clearly no person in her senses would have accepted the more expensive term.[5] This constituted, at least, procedural unconscionability.

Similarly, we see no reasonable social or economic reason for structuring Loan II for six years with its attendant higher costs without first explaining and comparing the costs of a three-year loan. This is not a case, for example, like *Campney,* where the court held that due on sale clauses are not substantively unconscionable. In that case, the Iowa Supreme Court expressly found that such clauses were standard provisions. 357 N.W.2d at 618. Applying *Campney* to this case, one might find that the failure to explain how a three-year loan would operate when compared to a six-year loan would not be unconscionable were six year loans the norm. Here, however, there was testimony that consumer loans for a period longer than 36 months are rarely made. Record at 381. The district court made no finding to the contrary.

Moreover, finding Loan II unconscionable will not run afoul of one of the concerns expressed in *Campney,* namely, that finding the due on sale clause unconscionable would adversely affect the supply of lendable funds by limiting a lender's ability to protect his loan portfolio. *See Campney,* 357 N.W.2d at 618. No evidence was offered or claim made that BFC would not have made Besta a loan under a three-year agreement with only her personal property and motor vehicle as collateral. Indeed, the evidence is contrary. While we have been unable to locate testimony or a document showing the amount at which BFC estimated the value of the personal property, Besta's valuation of personal property form (Exh. 3) lists her household contents at a worth of $2775.00 for insurance purposes. The value of her motor vehicle is unknown. Therefore, the inescapable conclusion is that a real estate mortgage was not necessary to persuade BFC to make Besta the loan.

Additional evidence of this is the fact that the amount financed under Loan I was $1478.35 and BFC had only the household goods and automobile as security for the transaction. This suggests that BFC would have considered itself secure had it extended Besta the loan calculated by Keest—$1705.00 for three years.

BFC also insists that Besta was not required to buy insurance as a condition for obtaining Loan II. *See* Record at 498–504.

---

4. Other provisions in the Consumer Code mandate rules and express policies and practices, which if not obeyed or furthered in a transaction, might warrant a finding of unconscionability. *See, e.g.,* Iowa Code Annot. § 537.1102(2)(c)–(e) (liberal construction of Code to promote consumer understanding of credit transactions; obtaining credit at a reasonable cost; protecting against unfair practices); *id.* at § 537.2308 (prohibiting a loan term greater than 37 months where the amount financed is less than $1000.00); *id.* at § 537.2307 (making void security interests in borrower's home where the amount financed in certain loans is $2000.00 or less).

5. This holding of unfair surprise is not based upon any notion of a "quasi-fiduciary" duty to disclose potentially disadvantageous contract terms. The existence of such a duty was clearly rejected by the Iowa Supreme Court in *Campney,* 357 N.W.2d at 619. Here, however, even a careful reading of the contract by Besta would not have disclosed the advantages of an alternative proposition. Also, the intertwining of the obligations of Loan I with the new requirements of Loan II made contract comparison difficult, if not impossible, for the average borrower and, thus, removed this situation from the rationale advanced in Campney.

Using Keest's hypothetical loan as an example of a loan made without insurance, the amount financed under a three-year plan would have been $1444.46 ($564.47 cash advanced to finish basement plus $877.76 used to pay off the outstanding balance from Loan I). This amount is less than the amount financed under Loan I—$1478.35—when BFC felt itself to be adequately secured through the use of Besta's personal property as collateral.

Applying the same reasoning to the six-year loan that was actually extended, we again must conclude that BFC would have made a loan using only Besta's personal property as security. If Besta had not purchased the insurance listed under Loan II (and BFC says she did not have to), the amount financed would have been only $1442.23, an amount less than that financed under Loan I. Thus, there is no basis under which we should enforce an agreement that BFC could never have negotiated had it made full and fair disclosure.

We do recognize that by structuring Loan II for six years BFC was able to obtain a security interest in Besta's house. For some borrowers, this may have been the only way to obtain a loan. In those cases, though, there would have been no more advantageous terms to disclose. Such is not what occurred in this case. Mootz stated in his deposition that BFC was, in fact, oversecured on Loan I, and he based that assessment on Besta's work history and payment record. *See* Deposition at 67. Therefore, there is no reason to conclude that BFC set up Loan II in this manner because it would have been imprudent, creditwise, to lend an amount less than $2000.00 and not have a mortgage in Besta's house. And, the district court did not so conclude.

Considering the Code policies and the circumstances surrounding Loan II, executing this loan for six years without disclosure of the three year option was an unconscionable practice—both under Iowa common law and the Iowa Consumer Credit Code. We reverse the district court and remand for rescissionary relief—but direct that BFC may collect on its judgment as if a three-year loan had been written, and find that BFC should have recourse to only those assets which would have been available as security under a three-year loan. As further relief, the district court should award Besta her reasonable attorney fees pursuant to section 537.5108(6) of the Iowa Consumer Credit Code.

### Conclusion

We recognize the deference owed the trial judge who has observed witnesses and gauged credibility. And, we have not overturned a single finding of fact to the extent that such finding applies to a fairly negotiated six year loan. However, we are uncomfortable with the fact that a lender would call up a borrower at home, tell her he could get her the money she needs, and then set up a loan that is exorbitantly expensive while failing to tell her that she could get everything she wants for less money and at a lower monthly payment. To the extent that the district court's decision did not address this matter, its decision that the loan in question was not unconscionable was an incorrect interpretation of the Iowa Code.

Accordingly, the order appealed from is reversed and remanded for the granting of the relief specified in this opinion.

