**TURLEY MARTIN
COMPANY, Appellee,**

v.

**GILMAN PAPER COMPANY,
Appellant.**

No. 89–1382.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 18, 1990.

Decided June 12, 1990.

Edward E. Murphy, Jr., Clayton, Mo., for appellant.

Edward D. Weakley, St. Louis, Mo., for appellee.

Before BOWMAN and WOLLMAN, Circuit Judges, and ROSS, Senior Circuit Judge.

WOLLMAN, Circuit Judge.

Gilman Paper Company appeals the district court's [1] judgment entered on a jury verdict in favor of Turley Martin on its claim for a real estate broker's commission. We affirm.

I.

In January 1985, Gilman was leasing an office-warehouse building from Corporate Square Joint Venture, the owner, with an option to extend the lease period to forty-five years. Early that month, Gilman entered into an exclusive listing agreement with Turley Martin to find a subtenant for the remainder of the leasehold period. The listing agreement provided for the payment of a commission based on the sublease price if Gilman contracted during the one-year period of the listing agreement, or within two months thereafter, with any party Turley Martin had contacted.

Turley Martin procured a one-year sublease for a portion of the building during the listing period. Also during that time, Turley Martin's representative, Jane Hollo,

1. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

showed the building to Gerard Olson, director of corporate properties for McDonnell Douglas Corporation. Although Hollo continued to contact him, Olson did not indicate any interest in leasing the building. In June 1985, Hollo contacted a partner of Corporate Square to see whether Corporate Square was interested in repurchasing the leasehold interest. The partner indicated that Corporate Square was not interested in doing so.

In December 1985, Turley Martin asked Gilman to renew the listing agreement. Gilman responded that it would not renew the listing agreement but that it would continue to use Turley Martin as a leasing agent. Gilman agreed to pay Turley Martin a commission for any rental transaction that Turley Martin brought to Gilman. Turley Martin accepted this proposal.

In the early fall of 1985, Olson contacted Fairfax Pollnow, a representative of Corporate Square, to inquire about purchasing the building. Pollnow, in turn, contacted Gilman about the possibility of surrendering the leasehold interest. Pollnow told Gilman's controller that he had been approached by an investor who was interested in acquiring the property. In March 1986, Pollnow and Gilman reached an agreement on the terms for surrendering the leasehold interest. Final negotiations were also conducted with McDonnell Douglas for the sale of the entire building.

On April 8, 1986, Gilman surrendered its leasehold interest to Corporate Square, and Corporate Square contemporaneously sold the building to McDonnell Douglas. Shortly after closing, Turley Martin learned of the transaction and the purchaser's identity. Turley Martin demanded that Gilman pay it a commission. Gilman refused. Turley Martin then brought this diversity action to recover its claimed commission on theories of express written contract and quantum meruit. The district court granted Gilman's motion for a directed verdict on the express contract count, but submitted the case to the jury on the quantum meruit count. The jury returned a verdict for Turley Martin in the amount of $80,000 plus accrued interest.

## II.

Gilman contends that the district court erred in refusing to grant its motion for a directed verdict on the quantum meruit count, arguing that the written contracts should have precluded the submission of that claim to the jury.

Both parties agree that Missouri law applies. In *Ham v. Morris*, 711 S.W.2d 187 (Mo.1986), the Missouri Supreme Court noted that "the better view is to limit the availability of *quantum meruit* in real estate commission cases." The court upheld the award because the seller had not appealed the money judgment, which the court found to represent a reasonable value for the time the broker had spent to procure a sale. *Id.* at 191. In a later real estate commission case, however, the court did not question the availability of quantum meruit recovery. *Williams v. Enoch*, 742 S.W.2d 165 (Mo.1987) (reversing and remanding a jury verdict because of the trial court's failure to instruct the jury on the necessity of proof that the plaintiff/broker was the procuring cause of the sale, an essential element of quantum meruit recovery).

Gilman refers to other Missouri cases that it claims support the proposition that a recovery in quantum meruit is not permitted in real estate commission cases. Without reviewing those cases here, we acknowledge that Missouri law on this issue is, in our view at least, not entirely clear. "In a diversity case in which the state's highest court has not expressly decided an issue, we defer to the local district court's interpretation on the question unless it is 'fundamentally deficient in analysis or otherwise lacking in reasoned authority.'" *Pershern v. Fiatallis North America, Inc.*, 834 F.2d 136, 138 (8th Cir.1987) (citations omitted). Although the record does not contain an expression of the district court's reasons for submitting the quantum meruit count to the jury, we have no reason to believe that the district court incorrectly applied Missouri law. *Cf. Besta v. Beneficial Loan Co.*, 855 F.2d 532, 533–34 (8th Cir.1988). Accordingly, we conclude that

the district court did not err in submitting the case to the jury on the quantum meruit claim. Gilman cites no law that forbids a party from pleading quantum meruit as an alternative theory of recovery to a contract claim, just as the law does not forbid the pleading of alternative theories to other claims. The concerns with quantum meruit recoveries that the Missouri Supreme Court expressed in *Ham*—subjecting vendors to multiple suits by various brokers who might all claim to be a procuring cause of the sale—did not exist here.

Gilman also contends there was insufficient evidence to submit to the jury the issues of whether Turley Martin's efforts were the procuring cause of the sale of Gilman's leasehold and whether Gilman hired Turley Martin to sell, as well as lease, the leasehold interest. Because neither party has raised the issue of whether state or federal standards should govern, and we are not aware that Missouri state standards substantially differ from federal standards, we treat Missouri standards as controlling. *R.W. Murray Co. v. Shatterproof Glass Corp.*, 758 F.2d 266 (8th Cir. 1985). Under Missouri law, whether a plaintiff made a submissible case is determined by reviewing the evidence in the light most favorable to the plaintiff, giving the plaintiff the benefit of all legitimate favorable inferences. *Capra v. Phillips Investment Co.*, 302 S.W.2d 924, 929 (Mo. 1957). After reviewing the record in this light, we conclude that the evidence justified submitting the case to the jury.

The judgment of the district court is affirmed.