**FRATERNAL ORDER OF EAGLES,
WATERLOO AERIE NO.
764, Appellant,**

v.

**ILLINOIS CASUALTY
COMPANY, Appellee,**

**Betty Jane Fournier, as Administrator
of the Estate of Brian Keith Webber,
Deceased, Intervenor-appellant.**

No. 84–348.

Supreme Court of Iowa.

March 20, 1985.

David J. Dutton and Bruce L. Braley of Mosier, Thomas, Beatty, Dutton, Braun & Staack, Waterloo, for appellant.

C.A. Frerichs of Fulton, Frerichs, Martin & Andres, P.C., Waterloo, for intervenor-appellant.

Thomas A. Finley and Lorraine J. May of Duncan, Jones, Riley & Finley, Des Moines, for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McCORMICK, McGIVERIN and LARSON, JJ.

McGIVERIN, Justice.

Plaintiff Fraternal Order of Eagles, Waterloo Aerie No. 764 (Eagles), and intervenor Betty Jane Fournier, as administrator of the estate of Brian Keith Webber, deceased, appeal from a summary judgment for defendant Illinois Casualty Company in a declaratory action seeking to increase defendant's liability to Eagles for a judgment previously entered in favor of intervenor against Eagles in a dram shop action. We affirm.

On appeal, Eagles, a liquor licensee for the purposes of Iowa Code section 123.92 (1983), contends that the language of its dram shop insurance policy with defendant should be construed so as to provide for further liability on defendant's part in addition to a sum defendant has already paid under the policy. We find no merit in this contention.

I. *Background facts and proceedings.* There is no dispute as to any relevant fact. On May 15, 1981, a car driven by Glenn Dubois struck and killed Brian Webber, a minor child.

Intervenor Betty Jane Fournier, as administrator of Brian's estate, *see* Iowa Code section 611.20, and in her own right as Brian's mother, *see* Iowa R.Civ.P. 8, brought an action for wrongful death and parental loss against Eagles under the Iowa dram shop statute, claiming that Dubois was intoxicated and that Eagles was responsible for his acts while he was intoxicated. *See* Iowa Code section 123.92.[1] On July 26, 1983, the jury in that action returned a verdict against Eagles in favor of intervenor as the administrator of Brian's estate in the amount of $87,644.22. The jury also returned a verdict against Eagles

in favor of Betty individually, as Brian's mother, in the amount of $100,000.

Defendant, who was Eagles' insurer under a dram shop insurance policy, paid $50,000 to the clerk of court by check to apply on the judgments entered on the verdicts. The trial court in the dram shop case directed the clerk of court to apply the money to Betty in her individual capacity as Brian's mother.

Defendant had previously also paid $20,000 to a third party in settlement of a claim for personal injuries arising out of the same accident in which Brian Webber was killed.

The dram shop liability insurance policy under which Eagles was insured by defendant read in part as follows:

Limits of Liability:—(a) Bodily Injury: The liability of the Exchange in respect to any one person who shall be injured in person, including death, shall not exceed the amount set forth in the Declarations as limits of liability for "Bodily Injury, One Person" and the liability of the Exchange in respect to all persons who shall be injured in person, including death, on account of any one occurrence, or any one accident, or a series of accidents or occurrences arising out of any one event or any one case of intoxication, shall not exceed the amount set forth in the Declarations as a limit for "Bodily Injuries, One Occurrence."

The declaration page provided in part: Statement 5. Limits of Liability: $50,000.00 bodily injury one person; $100,000.00 bodily injuries one occurrence; $50,000.00 injury to means of support; $50,000.00 property damage.

Eagles brought this declaratory judgment action, Iowa R.Civ.P. 261–62, against defendant, contending that defendant, as its insurer, was still liable to Eagles under

---

1. Iowa Code section 123.92 provides in part:
   Every husband, wife, child, parent, guardian, employer or other person who shall be injured in person or property or means of support by any intoxicated person or resulting from the intoxication of any such person, shall have a right of action, severally or jointly, against any licensee or permittee, who shall sell or give any beer or intoxicating liquor to any such person while he or she is intoxicated, or serve any such person to a point where such person is intoxicated, for all damages actually sustained.

the "Bodily Injury" portion of the insurance policy for an additional $30,000. Betty, as administrator of Brian's estate, filed a petition of intervention on behalf of Eagles. *See* Iowa R.Civ.P. 75.

Eagles maintained that Betty, for the purposes of the prior dram shop action, was "injured in person" not only in her capacity as representative of her deceased son's estate, but also in her capacity as the deceased's mother, and that these injuries were separate and distinct. *See Dunn v. Rose Way, Inc.*, 333 N.W.2d 830, 832 (Iowa 1983). Under Eagles' theory of the case, the $50,000 already paid by defendant to Betty in her individual capacity had discharged defendant's liability under the insurance policy with respect to her injury as an individual, because the policy provided for a $50,000 liability limit on payments in respect to each person "injured in person." However, Eagles argued that the intervenor estate had also been "injured in person," and that Betty, as the representative of her son's estate, should in effect be treated under the insurance policy as a different person, one entitled to a wholly separate and untapped $50,000 liability limit from defendant.

At this point Eagles recognized that the policy stated that in no event would defendant's liability for damages arising from any one occurrence exceed $100,000. Eagles noted that defendant had already paid $50,000 to Betty as the mother and $20,000 to another person. Since $30,000 remained before defendant's "per occurrence" liability was exhausted, Eagles sought a declaratory judgment to recover under the "Bodily Injury" portion of the policy in that amount.

Defendant answered and denied Eagles' claims. Defendant maintained that Betty, in her individual capacity as Brian's mother, was not "injured in person" because that phrase, for the purposes of the insurance policy, referred only to bodily injury. Under defendant's theory, its prior payment of $50,000 to the clerk of court, which the dram shop case court directed should be paid to Betty as Brian's mother, discharged all of its liability to her in any capacity on all claims arising from Brian's death, because Brian (but not Betty) had suffered "injury in person" and the policy provided for a $50,000 liability limit with respect to each person injured in person. Defendant did not deny that Betty had separate causes of action as an administrator and as a mother, but it argued that its total liability on both claims arising from Brian's death could not exceed $50,000 because only one person (Brian) had suffered injury in person, i.e., bodily injury. Because defendant had already paid $50,000 to the clerk of court to apply on the judgments, it contended that its liability under the policy was fully discharged.

Intervenor estate, joined by Eagles, and defendant filed cross-motions for summary judgment. Iowa R.Civ.P. 237. The district court impliedly denied the motion of Eagles and the intervenor estate and granted defendant's motion, ruling that the phrase "injured in person," as used in the insurance policy, referred only to bodily injury. Accordingly, the court held that defendant's liability under the policy to intervenor estate and Eagles had been discharged by its payment of $50,000 to the clerk of court. This appeal by Eagles and intervenor estate followed.

II. *The meaning of "injured in person" as used in insurance policy.* Defendant concedes that intervenor, as administrator of Brian's estate, was "injured in person" within the meaning of the policy, inasmuch as in that capacity she was representing her son, who suffered bodily injury. The controlling question presented here is whether Betty was also "injured in person" in her individual capacity as Brian's mother.

Eagles contends that the phrase "injured in person" is ambiguous and could be interpreted as referring either to bodily injury or to "personal injury" in the broad sense of injury to any personal right, including the right of a parent to the services, companionship, and society of a minor

child. *See* Iowa R.Civ.P. 8.[2] Accordingly, Eagles argues that the ambiguity should be strictly construed against defendant to allow recovery by Eagles on its claim. Eagles and the intervenor estate in the petition seek recovery only under the "Bodily Injury" portion of the policy quoted above and not under other portions of the policy.

■ Defendant argues that the phrase "injured in person," as used in the insurance policy, is not ambiguous and can be reasonably interpreted as referring only to bodily injury. We agree. The policy is not ambiguous merely because it could have been worded more clearly or precisely than it in fact was. *See Raska v. Farm Bureau Mutual Insurance Co. of Michigan,* 412 Mich. 355, 362, 314 N.W.2d 440, 441 (1982). "Ambiguity may be said to appear when, after the application of pertinent rules of interpretation to the face of the instrument, a genuine uncertainty results as to which one of two or more meanings is the proper one." *Gendler Stone Products Co. v. Laub,* 179 N.W.2d 628, 631 (Iowa 1970). We believe that the relevant principles of interpretation leave no room for genuine uncertainty as to the meaning of the phrase in question.

The coverage of the policy is revealed in the first paragraph of the insurance policy, titled "Insuring Clause A—Liability," which reads:

> To insure the hereinabove-named Insured against loss which the Insured shall, by reason of § 92, § 93, § 94, of Chapter 131, Acts of the 64th General Assembly, First Session, [(Iowa Code section 123.-92)], as it now appears or may hereafter be amended, become legally liable to pay any person or persons *who shall be injured in person or property or means of support* by any intoxicated person or resulting from the intoxication of any such person, provided such liability arises during the policy period as a result

of the selling or giving of any intoxicating liquor or beer during the policy period to any person or persons at the premises described in the Policy Declarations.

(Emphasis supplied.)

The effect of the policy was clearly to insure Eagles, up to the policy's limits, against the types of claims for which it might be held liable under Iowa Code section 123.92. These claims are defined in the statute and in Insuring Clause A as claims of persons "injured in person or property or means of support." In view of the policy's exact reproduction of the statutory language and its express reference to the statute as defining its parameters, we believe that the result was to provide Eagles with insurance coverage that was, within the policy limits, coextensive with Eagles' potential liability under section 123.92. We, therefore, shall interpret the phrase "injured in person" to have the same meaning in the insurance policy as it does in section 123.92. *See* 17 Am.Jur.2d *Contracts* § 263 (1964); 17A C.J.S. *Contracts* § 299 (1963).

Turning to our cases under the dram shop statute, we find that Eagles' interpretation of "injured in person" as meaning personal injury in the broad sense was specifically rejected in *Calloway v. Laydon,* 47 Iowa 456, 458 (1877). There we said that "in person," as used in the statute, means, "in body." To the same effect are *Welch v. Jugenheimer,* 56 Iowa 11, 13, 8 N.W. 673 (1881); *Ward v. Thompson,* 48 Iowa 588, 593 (1878); and *Kearney v. Fitzgerald,* 43 Iowa 580, 586 (1876). This appears to be the general rule in jurisdictions having a dram shop act which speaks of injury "in person." *See e.g., State Farm Mutual Automobile Insurance Co. v. Village of Isle,* 265 Minn. 360, 368, 122 N.W.2d 36, 41–42 (1963); *see generally* Annot., 6 A.L.R.2d 798, § 3 (1949). *See also Haafke*

---

2. Iowa R.Civ.P. 8 concerning a parent's claim provides:

> A parent, or the parents, may sue for the expense and actual loss of services, companionship and society resulting from injury to or death of a minor child.

This rule authorizes a parent's claim for loss of a child's consortium. *See Madison v. Colby,* 348 N.W.2d 202, 207 (Iowa 1984).

*v. Mitchell*, 347 N.W.2d 381, 389 (Iowa 1984) (grief, mental anguish, remorse, and humiliation not compensable under Iowa dram shop statute on parent's claim brought under Iowa R.Civ.P. 8 against liquor licensee).

We conclude that the phrase "injured in person" appearing in section 123.-92 refers only to bodily injury. Because we believe that the purpose of the policy was to provide insurance coextensive with Eagles' potential statutory liability, it follows that the phrase "injured in person" appearing in the insurance policy should also be interpreted as referring only to bodily injury. Betty Jane Fournier was not, in her individual capacity as mother of Brian Keith Webber, "injured in person" within the meaning of the policy, because she suffered no bodily injury. Brian, of course, was "injured in person," but defendant has already discharged its liability under the policy with respect to his injury by its previous payment of $50,000 to the clerk of court.[3] No further recovery can be had on the policy under the theory that Betty as an individual parent was "injured in person."[4] We do not decide whether any claim on her part as a parent under Iowa R.Civ.P. 8 based on Iowa Code section 123.92 for injury to property or to means of support would be compensable under other provisions of the policy because such issues are not raised in this case.

We also reserve the question of whether the language of the insurance policy in this case would, in a case not affected by the dram shop statute, preclude a total recovery, for all claims arising in consequence of Brian's injury, in excess of the policy's $50,000 liability limit for bodily injury to one person.

Under the view we take of the case, it is unnecessary to discuss the other contentions of the parties. The district court was correct in granting summary judgment to defendant. The case is affirmed.

AFFIRMED.

---

**3.** Although the $50,000 payment was ultimately, by order of the dram shop trial court, paid to Betty in her individual capacity as mother, we do not view the payment as a volunteer payment from defendant to Betty as mother, nor do Eagles and the intervenor estate contend that it was. The check, payable to the clerk of court, bore a notation stating that it was to be applied to the judgments of Betty as mother and as administrator. The allocation of the money between those two legal entities was not defendant's responsibility. Instead, it was the responsibility of Betty, as mother, and the intervenor estate under the direction of the dram shop trial court. No party in the present case contends otherwise.

**4.** *Cf. Hastings v. James River Aerie No. 2337—Fraternal Order of Eagles*, 246 N.W.2d 747, 749 (N.D.1976) (wife who has lost husband's consortium is "injured in property" within the meaning of North Dakota's dram shop act). North Dakota's dram shop statute, like Iowa's statute, is phrased in terms of persons "injured in person, property, or means of support."