Earl A. CAIRNS, Appellee,

v.

**GRINNELL MUTUAL REINSURANCE
COMPANY, Appellant.**

No. 85–1710.

Supreme Court of Iowa.

Jan. 14, 1987.

Roger L. Ferris and John F. Lorentzen of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., Des Moines, for appellant.

M. Gene Blackburn and Daniel W. Willems of Law Offices of M. Gene Blackburn, P.C., Fort Dodge, for appellee.

Considered by McGIVERIN, P.J., and LARSON, CARTER, WOLLE, and LAVORATO, JJ.

WOLLE, Justice.

In this appeal Grinnell Mutual Reinsurance Company (Grinnell Mutual) challenges the district court determination that its farm liability policy required it to defend a lawsuit arising out of a collision involving a motor vehicle owned by the wife of its named insured Earl A. Cairns. We conclude that the policy language unambiguously excluded coverage for liability arising out of the circumstances of that collision. Consequently, Grinnell Mutual had no duty to defend Earl Cairns in the lawsuit. We reverse the judgment entered by the trial court in favor of Cairns and against Grinnell Mutual.

Norma and Earl Cairns were married and living together on a farm in Greene County when Norma was involved in a tragic automobile collision. On October 2, 1980 Norma was driving her automobile on a county road in rural Greene County some distance from their farm when she collided with another automobile causing the death of its driver. The executor of the deceased driver's estate filed a wrongful death action against both Norma and her husband Earl praying for damages in the amount of $835,000.00. The petition at law alleged that Norma had negligently operated her vehicle, causing the collision and resulting death. In separate counts directed at Earl, the petition alleged that Norma at the time of the collision was Earl's employee acting within the scope of her employment or was engaged in a joint venture with him.

Norma and Earl Cairns had procured not only the "Farm-Guard" farm liability policy issued by Grinnell Mutual which is the subject of this lawsuit but also motor vehicle liability insurance issued by Farmland Mutual Insurance Company (Farmland) covering the automobile owned by Norma and a

pick-up owned by Earl. The Farmland policy covered Norma's liability arising out of the collision up to the limit of $50,000, and Farmland retained a lawyer to defend Norma in the lawsuit. Earl asked Grinnell Mutual to defend him in the lawsuit and indemnify him up to the limit of $25,000 in the "Farm-Guard" policy based on the "Coverage A" public liability coverage and the separate duty to defend him in any suit "seeking damages ... payable under the terms of this policy." Grinnell Mutual refused coverage and refused to defend based on the section of the policy labeled "EXCLUSIONS" in which the policy stated:

This policy does not apply:

*     *     *     *     *     *

B. under any of the coverages, to the ownership, maintenance or use, including loading and unloading of

1. automobiles ... while away from the premises, except under coverage A with respect to automobiles not owned by, rented or leased to an insured but used in connection with operations by independent contractors for non-farming or non-business purposes of an insured, or operated by a farm employee of the insured while engaged in the employment of the insured; ....

Earl retained private counsel to defend him in the wrongful death action, and in July of 1982 the lawsuit was settled for $85,000. Farmland paid its $50,000 liability limit, while the Cairns contributed the remaining $35,000. Earl Cairns then brought the present damage action against Grinnell Mutual contending that it had breached its contractual obligations under the farm liability policy by refusing to indemnify and defend him in the wrongful death suit.

Following a bench trial, the trial court found that the "Farm-Guard" policy's automobile exclusion clause was ambiguous. The court concluded that the Grinnell Mutual policy "insured [Earl] against liability arising out of use of automobiles by [his] employees while engaged in the employment of [Earl], without regard to who owned the automobile." The court held

that Norma was not in fact an employee of Earl and therefore the collision which brought about the wrongful death lawsuit was "excluded from coverage by the policy exclusion." The trial court then determined, however, that Grinnell Mutual had breached its broader duty to defend Earl Cairns and was liable for damages resulting from that breach of contract. The trial court entered judgment for Earl Cairns for $3,987.36, the amount he paid the attorney who defended him in a lawsuit. Cairns also received judgment for $25,000 representing an amount he had contributed to the settlement of the wrongful death claim, that sum being the policy limit on the Grinnell Mutual "Farm-Guard" policy.

Although the parties have both raised several issues in their briefs and arguments, we need answer only two questions in disposing of this appeal: whether Grinnell Mutual established that the language of the policy unambiguously excluded this automobile collision from coverage; and whether Cairns established as a matter of law that he was entitled to coverage to effect his reasonable expectations.

I. *Interpretation of the Policy's Automobile Exclusion Provision.*

■ Well-established principles govern our interpretation of this insurance policy, a form of written contract. Iowa Rule of Appellate Procedure 14(f)(14) provides:

In the construction of written contracts, the cardinal principle is that the intent of the parties must control; and except in cases of ambiguity, this is determined by what the contract itself says.

The object of contract interpretation is to ascertain from the language "the intent of the contracting parties at the time the contract was made." *Home Federal Savings and Loan Association v. Campney*, 357 N.W.2d 613, 617 (Iowa 1984). When, as here, neither party offers extrinsic evidence concerning the meaning of the relevant contract language, the process of construing or interpreting the meaning of the words used is a matter for the court to

decide as a question of law. *Farm Bureau Mutual Insurance Co. v. Sandbulte*, 302 N.W.2d 104, 108 (Iowa 1981); *Connie's Construction Co. v. Fireman's Fund Insurance Co.*, 227 N.W.2d 207, 210 (Iowa 1975).

■ Ambiguity exists if, "after the application of pertinent rules of interpretation to the face of the instrument, a genuine uncertainty results as to which one of two or more meanings is the proper one." *Fraternal Order of Eagles v. Illinois Casualty Co.*, 364 N.W.2d 218, 221 (Iowa 1985) (quoting *Gendler Stone Products Co. v. Laub*, 179 N.W.2d 628, 631 (Iowa 1970)). We construe ambiguous insurance policy provisions in a light favorable to the insured because insurance policies constitute adhesion contracts. *Gateway State Bank v. North River Insurance Co.*, 387 N.W.2d 344, 346 (Iowa 1986). It is therefore incumbent upon an insurer to define clearly and explicitly any limitations or exclusions to coverage expressed by broad promises. *Id.* at 346; *Bankers Life Co. v. Aetna Casualty & Surety Co.*, 366 N.W.2d 166, 169 (Iowa 1985). In examining an insurance policy, however, we will not "write a new contract of insurance between the parties" where there is no ambiguity. *Stover v. State Farm Mutual Insurance Co.*, 189 N.W.2d 588, 591 (Iowa 1971). We avoid straining the words and phrases of the policy "to impose liability that was not intended and was not purchased." *Gateway*, 387 N.W.2d at 346; *State Farm Auto Insurance Co. v. Malcolm*, 259 N.W.2d 833, 835 (Iowa 1977).

We are benefited in construing the automobile exclusion in this "Farm-Guard" policy because in two previous cases we have interpreted very similar language in other farm liability insurance policies. In *Stover* we held as a matter of law that the automobile exclusion clause unambiguously precluded the insured from requiring the insurer to indemnify and defend him against a claim by a farm employee who was loading a truck at another farm. 189 N.W.2d at 591–92. Thereafter, in *Farm Bureau Mutual Insurance Co. v. Sandbulte*, we held as a matter of law that a similar provision was unambiguous and clearly excluded coverage of a motor vehicle operated by an employee some distance from the insured's premises. 302 N.W.2d at 108.

Turning to the specific exclusionary language of this policy, quoted above, and the facts concerning Norma Cairns' collision, we likewise conclude that the language is unambiguous and excludes coverage for the named insured Earl Cairns. The trial court accepted the Cairns interpretation that the final clause of paragraph B.1—"operated by a farm employee of the insured while engaged in the employment of the insured"—could be read separately from the words "automobiles not owned by" in the preceding clause. Under that interpretation of the policy Grinnell Mutual had a duty to defend Earl Cairns regardless of who owned the automobile, because the wrongful death claimant had alleged Norma was Earl's employee. We disagree with the trial court, finding that interpretation strained and unreasonable.

■ Grinnell Mutual correctly reads this automobile exclusion provision to apply equally to use of owned automobiles in connection with operations by independent contractors and use of owned automobiles by farm employees. Both exceptions to the exclusion apply only when the automobile being used is "not owned by, rented or leased to an insured." Norma Cairns, owner of the automobile, fell within the policy's definition of "an insured."

■ Ambiguity is not present merely because the provision "could have been worded more clearly or precisely than it in fact was." *Fraternal Order of Eagles*, 364 N.W.2d at 221. When a sentence contains several antecedents and several consequents, the words "are to be applied to the subjects that seem most properly related by context and applicability." 2A *Sutherland Statutory Construction* § 47.26 (1984). In exploring statutory intent, we have consistently reasoned that qualifying words and phrases ordinarily refer only to the immediately preceding antecedent.

*State v. Kluesner*, 389 N.W.2d 370, 371 (Iowa 1986); *State v. Lohr*, 266 N.W.2d 1, 3 (Iowa 1978); 2A *Sutherland Statutory Construction* at § 47.33. We apply a similar analysis here. *See* 4 S. Williston, *A Treatise on the Law of Contracts* § 600, at 285 (1961). In doing so, we adhere to the proposition that "a contract should be read and interpreted as an entirety rather than seriatim by clauses", *Archibald v. Midwest Paper Stock Co.*, 176 N.W.2d 761, 763 (Iowa 1970); *see* 13 J. Appleman, *Insurance Law and Practice* § 7383, at 45 (1976). Moreover, we concentrate on the commonly accepted and ordinary meaning of the language used. *Campney*, 357 N.W.2d at 617.

■ Our application of the doctrine of the last preceding antecedent produces a contextually sound interpretation which is also consistent with the very nature of a farm liability policy. The operation of automobiles owned by an insured is a separate and distinct risk from the type for which persons ordinarily purchase farm liability insurance. *See Sandbulte*, 302 N.W.2d at 113–14.

■ Although the trial court determined as an issue of fact that Earl Cairns was not Norma's employer and was therefore not entitled to indemnity under the farm liability policy, it held that Grinnell Mutual had a duty to defend him in the wrongful death action because the plaintiff had alleged she was his employee. We conclude that Grinnell Mutual was not obligated to indemnify or defend Earl Cairns in that lawsuit. The duty to defend

> arises whenever there is a potential or possible liability to pay based on the facts at the outset of the case and is not dependent on the probable liability to pay based on the facts ascertained through trial.

*McAndrews v. Farm Bureau Mutual Insurance Co.*, 349 N.W.2d 117, 119 (Iowa 1984) (quoting 7C J. Appleman, *Insurance Law and Practice* § 4684, at 83 (Berdahl ed. 1979)); *see also* 14 G. Couch, *Couch on Insurance 2d* § 51:51, at 501 (1982). Grinnell Mutual had excluded liability coverage of a collision involving an owned vehicle away from the premises regardless whether its operator was an employee. Grinnell Mutual therefore had the right to refuse to defend Earl in this lawsuit, because the facts alleged in the petition did not create a potential liability which Grinnell Mutual's policy would cover. The trial court erred in entering judgment against Grinnell Mutual for its refusal to defend the wrongful death claim.

## II. *Reasonable Expectations.*

■ Cairns contends that even if the automobile exclusion clause was unambiguous, we should rewrite the policy to include coverage based on the doctrine of reasonable expectations recognized by our court in *Rodman v. State Farm Mutual Automobile Insurance Co.*, 208 N.W.2d 903, 906 (Iowa 1973), and in *C & J Fertilizer, Inc. v. Allied Mutual Insurance Co.*, 227 N.W.2d 169, 176–77 (Iowa 1975). Reasonable expectations giving rise to application of the doctrine may be established by evidence of the underlying negotiations or may be inferred from the circumstances under which the policy was procured and issued. *Sandbulte*, 302 N.W.2d at 112; Restatement (Second) of Contracts § 237, at 541 (comment *f*).

■ In this case, however, the trial court specifically addressed this issue and found no factual basis to support the reasonable expectations theory Cairns advanced. The court wrote:

> The doctrine of reasonable expectations obligates the Court to ignore a policy exclusion if the exclusion: (1) is bizarre or oppressive; (2) eviscerates' terms explicitly agreed to; or (3) eliminates the dominant purpose of the transaction. The automobile exclusion in question did none of the three. The admitted purpose for the policy was to protect from risks associated with farming, not to serve as auto insurance. The exclusion for auto accidents not involving farm employees doing farm work is reasonable. It does not eliminate the dominant purpose of the transaction, nor is it bizarre or op-

pressive. There is no evidence that plaintiff and defendant explicitly agreed to any inconsistent terms. The doctrine of reasonable expectations does not apply in this case. Defendant had no duty to indemnify plaintiff.

We agree with the trial court's definition of the doctrine of reasonable expectations and find support in the evidence for its factual conclusions.

The trial court's fact findings have the effect of a special verdict and are binding on us if supported by substantial evidence. *Public Finance Co. v. Van Blaricome*, 324 N.W.2d 716, 718 (Iowa 1982). Cairns had the burden of proof on the issue of reasonable expectations. To prevail in the face of contrary fact findings by the trial court, Cairns must demonstrate that the evidence was so overwhelming that he carried his burden as a matter of law. *Whiteaker v. State,* 382 N.W.2d 112, 114 (Iowa 1986). His evidence of reasonable expectations fell far short of that mark.

The trial court did not err in finding against Cairns on his claim of insurance coverage based on the doctrine of reasonable expectations.

Grinnell Mutual had no duty to indemnify or defend Earl Cairns. We reverse the judgment entered in favor of Cairns and against Grinnell Mutual.

REVERSED.