Luz MONCIVAIS, Jr., and Barbara Moncivais, Appellees,

v.

FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant.

No. 87–415.

Supreme Court of Iowa.

Oct. 19, 1988.

John C. Hendricks of Stanley, Lande, Coulter & Nepple, Muscatine, for appellant.

Eric M. Knoernschild of Hintermeister & Knoerschild, and Terrence L. Mealy, Muscatine, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, SCHULTZ, and ANDREASEN, JJ.

ANDREASEN, Justice.

Farm Bureau Mutual Insurance Company (Farm Bureau) appeals the order granting summary judgment to Luz Moncivais, Jr., and Barbara Moncivais. This case stems from the accidental death of eleven-month-old Aubrie Moncivais while she was in the care of the insured, Mrs. Arlene Y. Cooper. We must determine if the business pursuit exception in this policy will allow coverage under the facts of this case.

Arlene Cooper provided child day care services in her home. Eleven-month-old Aubrie Moncivais, daughter of Luz and Barbara Moncivais, was in the care of Mrs. Cooper on August 3, 1981. On that morning, Aubrie was placed in a crib with another infant. A toy had been tied to the crib with some twine. While the children were in the crib, Mrs. Cooper went about other household chores. While Mrs. Cooper was away, Aubrie became entangled in the twine and was choked. Two weeks later, Aubrie died as a result of the choking. In a subsequent action for wrongful death, the Moncivaises obtained a judgment against the Coopers based on Mrs. Cooper's neglect and failure to supervise Aubrie which led to an unsafe environment.

Dwight and Arlene Cooper purchased a homeowner's policy from Farm Bureau on February 28, 1978. Following the judgment against the Coopers, the Moncivaises brought this action against Farm Bureau to satisfy that judgment, alleging coverage under the Coopers' homeowner insurance policy. Farm Bureau has denied coverage, based on the following language in the policy:

This policy does not apply:
1. Under Coverage E–Personal Liability

. . . .

d. to bodily injury or property damage arising out of business pursuits of any insured except activities therein which are ordinarily incident to non-business pursuits.

Arlene Cooper has operated a child care service for approximately fifteen years. At the time of Aubrie's death, she was caring for approximately seven children on a regular basis. The record reflects that Mrs. Cooper has at times had up to twenty-five children in her care. She would occasionally care for her own grandchildren or great-grandchildren. Her child care activities were not licensed by the state. Mrs. Cooper's testimony reveals that she was aware of the license requirement and, after consulting some of the parents using her services, she decided not to obtain a license. Mrs. Cooper had filed tax returns reflecting her business income from child care. Her 1980 returns reflected a gross income of over $8500.

Both Farm Bureau and the Moncivaises moved for summary judgment. The trial court found the activities of Mrs. Cooper to be ordinarily incident to nonbusiness pursuits and therefore not excluded under the policy terms. Farm Bureau's motion for summary judgment was denied and the Moncivaises were granted summary judgment. On appeal, the Iowa Court of Appeals affirmed the trial court and found the language of the business pursuits exclusion to be ambiguous. The court of appeals went on to construe the ambiguous provisions in favor of the insured. This matter is now before us on Farm Bureau's application for further review.

Our review of the summary judgment is at law. Iowa R.App.P. 4. In reviewing the grant of summary judgment under Iowa Rule of Civil Procedure 237(c), the issue is whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. *See Suss v. Schammel*, 375 N.W.2d 252, 254 (Iowa 1985). Our review consists of two levels of analysis; first, whether the trial court applied the proper legal analysis, and second, whether there are any material facts in dispute.

The heart of this dispute concerns the interpretation and application of the busi-

ness activities exclusion in the Coopers' homeowner insurance policy. The burden to prove applicability of an exclusion is placed on the insurer. *See City of Cedar Rapids v. Northwestern Nat'l Ins. Co.*, 304 N.W.2d 228, 230 (Iowa 1981). When interpreting the language of an insurance contract, we are guided by the principles set forth in *Cairns v. Grinnell Mutual Reinsurance Co.*, 398 N.W.2d 821, 823–24 (Iowa 1987). The object of contract interpretation is to ascertain from the language "the intent of the contracting parties at the time the contract was made." *Id.* (quoting *Home Federal Sav. & Loan Ass'n v. Campney*, 357 N.W.2d 613, 617 (Iowa 1984)); *see also* Iowa R.App.P. 14(f)(14). When neither party offers extrinsic evidence concerning the interpretation of the relevant contract language, the interpretation of that language by the court is a question of law. *Cairns*, 398 N.W.2d at 823–24. Ambiguity exists "if, 'after the application of pertinent rules of interpretation to the face of the instrument, a genuine uncertainty results as to which one of two or more meanings is the proper one.'" *Id.* at 824. (quoting *Fraternal Order of Eagles v. Illinois Casualty Co.*, 364 N.W.2d 218, 221 (Iowa 1985)). Because insurance policies constitute adhesion contracts, we construe ambiguous policy provisions in a light favorable to the insured. *Cairns*, 398 N.W.2d at 824. The insurer must define clearly and explicitly any limitations or exclusions to coverage expressed by broad promises. *Id.* When there is no ambiguity, we will not write a new contract of insurance between the parties. Furthermore, we will not strain the words and phrases of the policy "to impose liability that was not intended and was not purchased." *Id.* (quoting *Gateway State Bank v. North River Ins. Co.*, 387 N.W.2d 344, 346 (Iowa 1986)).

■ Interpretation of the policy language involves two separate determinations. First, we must determine what type of activity is defined as a business pursuit. If Mrs. Cooper's activities did constitute a business activity, we must interpret the language "except activities therein which are ordinarily incident to non-business pursuits."

We have previously defined the type of activities which are considered business pursuits when interpreting insurance policies:

To constitute a business pursuit, there must be two elements: first, continuity, and secondly, the profit motive; as to the first, there must be a customary engagement or a stated occupation; and, as to the latter, there must be shown to be such activity as a means of livelihood, gainful employment, means of earning a living, procuring subsistence of profit, commercial transaction or engagements.

*Aid (Mut.) Ins. v. Steffen*, 423 N.W.2d 189, 191–92 (Iowa 1988) (quoting *Fadden v. Cambridge Mut. Fire Ins. Co.*, 51 Misc.2d 858, 862, 274 N.Y.S.2d 235, 241 (N.Y.Sup. Ct.1966)). Mrs. Cooper does not dispute that her child care activities constituted a business pursuit. The Iowa Code recognizes that certain child day care activities must be regulated as a business. *See* Iowa Code §§ 237A.1(7), 237A.1(8) & 237A.2 (1987). Iowa Code section 237A.1(7) defines child day care as "the care, supervision, or guidance of a child by a person other than the parent, guardian, relative or custodian for periods of two hours or more and less than twenty-four hours per day per child on a regular basis in a place other than the child's home...." Mrs. Cooper's activities meet the definition of child day care as set forth in the Iowa Code. The duration and extent of Mrs. Cooper's activities require that they be considered a business pursuit as defined by the insurance policy.

■ The policy language provides an exception to the business pursuits exclusion. We must now interpret the language of the business pursuits exclusion, "except activities therein which are ordinarily incident to non-business pursuits." A review of cases from other jurisdictions reveals several methods of analysis used to interpret this policy language. *See generally* Annotation, *Construction and Application of "Business Pursuits" Exclusion Provision in General Liability Policy*, 48 A.L.R.3d 1096, 1107–09 (1973).

Some jurisdictions have focused on the specific activities of the insured which

caused the unsafe environment for the child. In *Gulf Insurance Co. v. Tilley*, 280 F.Supp. 60, 64–65 (N.D.Ind.1967), *aff'd per curiam*, 393 F.2d 119, 120 (7th Cir.1968), a child was burned by an overturned coffee pot while in the care of a babysitter. The court focused on the insured's activity of brewing coffee and determined that brewing coffee was an activity not normally associated with childcare. The exception applied and coverage was granted. *Id.*

The result in *Tilley* stems from a narrow focus on the specific activities of the person providing child care. This focus would allow coverage when the unsafe environment or negligence resulted from activities not associated with child care, such as brewing coffee, but would not allow coverage if the unsafe environment was the result of activity associated with childcare, such as preparing food for the children. The possibility for inconsistent results when this form of analysis is utilized was discussed in *State Farm Fire & Casualty Co. v. Moore*, 103 Ill.App.3d 250, 255, 430 N.E.2d 641, 645, 58 Ill.Dec. 609, 613 (1981):

> As the lunch was for Moore and her child as well as the children for whom she sat, her activity falls within the exception. By contrast if she had been preparing lunch only for Marcus, [the child in her care] her activity would be, more likely, a business pursuit.

Another method of analyzing this issue was adopted by the California Supreme Court in *Crane v. State Farm Fire & Casualty Co.*, 5 Cal.3d 112, 485 P.2d 1129, 95 Cal.Rptr. 513 (1971). In *Crane*, a child was burned while in the care of a babysitter. There was no testimony concerning how the child was burned, however, the parties stipulated that the child was burned while in the insured's care. *Id.* at 115 n. 2 & 116, 485 P.2d at 1130 n. 2 & 1131, 95 Cal.Rptr. at 514 n. 2 & 515. In finding coverage the court took a broad view of child care, stating:

> Indeed, it is difficult to conceive of an activity more ordinarily incident to a non-commercial pursuit than home care of children.

*Id.* at 117, 485 P.2d at 1131, 95 Cal.Rptr. at 515; *see also State Farm Fire & Casualty Co. v. Moore*, 103 Ill.App.3d 250, 254–55, 430 N.E.2d 641, 645, 58 Ill.Dec. 609, 613 (1981) ("[*Crane*] views almost any injury due to a babysitter's negligent supervision of a child as potentially within the exception."). Other jurisdictions have followed *Crane*. *See Bakers Standard Ins. Co. v. Olwell*, 309 N.W.2d 799, 801–02 (Minn. 1981); *Western Fire Ins. Co. v. Goodall*, 658 S.W.2d 32, 34–35 (Mo.App.1983).

Other courts considering this language have rejected the *Crane* view of child care as well as the narrow analysis utilized in *Tilley*. In *Stanley v. American Fire & Casualty Co.*, 361 So.2d 1030, 1032 (Ala. 1978), the Alabama Supreme Court dealt with this issue when a child was injured while the caretaker was preparing a meal for herself and the children in her care. For purposes of analysis, the court considered the caretaker's activities as a failure to provide a safe environment and did not focus on the caretaker's specific act of preparing a meal. *Id.* The *Stanley* court dismissed *Tilley* by stating:

> The business of child care contemplates the exercising of due care to safeguard a child of tender years from household conditions and activities; and, any activity of the insured in this regard from which injury results cannot logically be called an activity ordinarily incidental to a non-business pursuit. In other words, the activity referred to is a failure to supervise rather than making coffee for a third party.

*Id.* Other jurisdictions have followed *Stanley* and held that activities central to home day care cannot be described as incident to nonbusiness pursuits. *See Republic Ins. Co. v. Piper*, 517 F.Supp. 1103, 1106 (D.Colo.1981); *Peterson v. Highland Ins. Co.*, 328 So.2d 49, 50 (Fla.App.1976) (per curiam); *Haley v. Allstate Ins. Co.*, 129 N.H. 512, 529 A.2d 394, 396 (1987); *Allstate Ins. Co. v. Kelsey*, 67 Or.App. 349, 678 P.2d 748, 751 (1984).

Another method of interpreting the business pursuits exclusion was demonstrated in *Foster v. Allstate Insurance Co.*, 637 S.W.2d 655 (Ky.App.1981). The *Foster* court reviewed the legal development in this area and concluded that the language is ambiguous and must be interpreted in

favor of the insured. *Id.* at 657. Other courts, including some courts which thoroughly discussed other methods of analysis, have concluded that this language was ambiguous. *See Gulf Ins. Co. v. Tilley,* 280 F.Supp. 60, 64–65 (N.D.Ind.1967), *aff'd per curiam,* 393 F.2d 119–20 (7th Cir.1968); *State Farm Fire & Casualty Co. v. Moore,* 103 Ill.App.3d 250, 256–57, 58 Ill.Dec. 609, 614–15, 430 N.E.2d 641, 646–47 (1981).

In summary, other jurisdictions have utilized several methods of analysis when applying this policy language to a child care setting. Some courts have focused on the specific actions of the insured which led to the unsafe environment. In that type of analysis, the determination of whether coverage exists is based upon a very technical distinction and may lead to conflicting results. Another form of analysis broadly defines all aspects of child care as activities ordinarily incident to nonbusiness activities. The effect of this method of analysis is to render the business pursuits exception meaningless in many commercial child care operations. A third method of analysis characterizes a lack of proper supervision in a home child care operation as an activity which is directly related to the business pursuit of professional child care. Under this method of analysis, the business pursuit exclusion would be applied to many accidents in home day care centers. Finally, some courts have concluded that this policy language is ambiguous and have provided coverage for the insured.

In applying the policy language to the facts of this case, we adopt the same approach as the *Stanley* court. The activity which caused Aubrie's death was the negligent care and supervision of the child. This led to an unsafe environment and resulted in Aubrie's death. Maintaining proper supervision and a safe environment for children are basic elements of a child day care operation. We agree with the court in *Republic Insurance Co. v. Piper,* 517 F.Supp. 1103, 1106 (D.Colo.1981), which stated:

> [N]othing could be more a part of the business of operating a day care home than supervision of the children under the licensee's care, and it was while supervising the child that the tort occurred.

We consider child care activities defined as daycare under Iowa law to be distinct from the traditional child-rearing activities of a family. Even though this result is harsh, we may not strain our analysis to describe Mrs. Cooper's operations as "ordinarily incident to non-business activities," neither may we ignore the plain meaning of the policy in order to find ambiguity.

As a matter of law, the district court erred in granting summary judgment to the Moncivaises and in overruling Farm Bureau's motion for summary judgment. The order of the district court granting summary judgment to the Moncivaises and denying summary judgment to Farm Bureau is reversed. The decision of the court of appeals affirming that ruling is vacated. We reverse the decision of the trial court and direct that judgment be entered in favor of Farm Bureau.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.