**NORTHWESTERN NATIONAL INSUR-ANCE COMPANY, and Northwestern National Casualty Company, Plaintiffs–Appellees,**

v.

**Alvin O. KINNEY, Jr., Juanita E. Kinney, Timberline Associates L.P., and Ron Walder, Defendants–Appellants.**

**No. 88–356.**

Court of Appeals of Iowa.

May 23, 1989.

Robert J. Todd, Burlington, for defendants-appellants.

William J. Cahill, Burlington, for plaintiffs-appellees.

Heard by OXBERGER, C.J., and DONIELSON and SCHLEGEL, JJ.

SCHLEGEL, Judge.

In this declaratory judgment proceeding, defendants-appellants Alvin O. and Juanita E. Kinney appeal the district court's determination that plaintiffs-appellees Northwestern National Insurance Company and Northwestern National Casualty Company (Northwestern) have no obligation to defend or indemnify the Kinneys under their insurance policy for property damage arising out of the sale of capital assets. On appeal, the Kinneys claim that the doctrine of "reasonable expectations" requires that the policy cover the purchaser's lawsuit against them. They also contend that the insurer is estopped from denying coverage.

Although this is a declaratory judgment action, we review it as any other judgment. Our scope of review is governed by how the case was tried in district court. *See In re Receivership of Mt. Pleasant Bank & Trust Co.*, 426 N.W.2d 126, 129 (Iowa 1988). As this case was tried in equity, our review is de novo. In equity cases, especially when considering the credibility of the witnesses, the court gives weight to the fact findings of the trial court, but is not bound by them. Iowa R.App.P. 14(f)(7).

Prior to 1982, the Kinneys owned and operated a mobile home park. At all relevant times the Kinneys had a general liability insurance policy written by Northwestern National Insurance Company. In 1982, the Kinneys sold the mobile home park. The purchaser later discovered that the private water supply to the park was contaminated. The purchaser then sued the Kinneys, alleging breach of express warranty, fraudulent concealment, and fraudulent misrepresentation.

The Kinneys looked to Northwestern National to defend them against the purchaser's lawsuit. Northwestern was reluctant to do so, but did secure a lawyer to represent the Kinneys. Northwestern did, however, send the Kinneys a letter reserving the right to determine later whether the policy actually covered the purchaser's lawsuit. Northwestern eventually took the position that its policy did not cover the lawsuit, and filed the present declaratory judgment action. The district court concluded that the policy did not provide coverage. The Kinneys appeal.

I. The Kinneys contend that the trial court erred in its determination that the doctrine of reasonable expectations was not applicable in this case because the term "property damage" in their insurance policy includes the type of property damage sued for by the purchasers of the mobile home park.

Before addressing the applicability of the doctrine of reasonable expectations to the facts of this case, we first address the Kinneys' argument that the policy language is ambiguous. Well-established principles govern our interpretation of this insurance policy. Ambiguity exists if, "after the application of pertinent rules of interpretation to the face of the instrument, a genuine uncertainty results as to which one of two or more meanings is the proper one." *Fraternal Order of Eagles v. Illinois Casualty Co.*, 364 N.W.2d 218, 221 (Iowa 1985). In examining an insurance policy, however, we will not write a new contract of insurance between the parties where there is no ambiguity. *Cairns v. Grinnell Mut. Reinsurance Co.*, 398 N.W.2d 821, 824 (Iowa 1987). As always, the object of any contract interpretation is to ascertain from the language the intent of the contracting parties at the time the contract was made. *Home Federal Savings and Loan v. Campney*, 357 N.W.2d 613, 617 (Iowa 1984).

When the purchasers of the Kinneys' mobile home park filed their lawsuit against the Kinneys, there were two insurance policies in place, one of which was a general liability policy, and the other which was a comprehensive excess liability insurance policy (an umbrella policy). Both policies contain insuring agreements which are substantially similar. As set out in the general liability policy, the insuring agreement provides:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of A. bodily injury or B. property damage to which this insurance applies, caused by an occurrence.

Both policies also contain the definitions of "property damage" and "occurrence" which are substantially similar and, as set forth in the general liability policy, provide as follows:

Property damage means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

\* \* \* \* \* \*

Occurrence means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected or intended from the standpoint of the insured.

We think it clear from the terms of both policies that "occurrence" means an accident and, under the supreme court's definition of "accident" in *Central Bearings Co. v. Wolverine Insurance Company*, 179 N.W.2d 443, 448 (Iowa 1970):

The word 'accident,' as used in insurance policies, has frequently been defined as ... an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force.... (Citations omitted).... As used in this policy, giving to the word the meaning which a man of average understanding would, we think it clearly implies a misfortune with concomitant damage to a victim, and not the negligence which eventually results in that misfortune.

Furthermore, both policies contained explicit exclusionary language. The exclusionary language of the general liability policy includes, in relevant part, the following language:

This insurance does not apply: (f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

\* \* \* \* \* \*

(k) to property damage to (1) property owned or occupied by or rented to the insured, (2) property used by the insured, or (3) property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control.

We hold that the Kinneys' requested construction of the policy language to include coverage for the claims made against them do not fall within the definition of property damage as found in the policies, which we find to be unambiguous. "A strained or unreasonable construction of the language used, where there is no real ambiguity, should not be indulged in." *Stover v. State Farm Mutual Insurance Co.*, 189 N.W.2d 588, 591 (Iowa 1971).

▬ The Kinneys apparently contend that even if the terms of the policies are unambiguous, the doctrine of reasonable expectations should be applied to the facts of this case to afford them coverage. The doctrine of reasonable expectations was first set out by the Iowa Supreme Court in *Rodman v. State Farm Mutual Automobile Insurance Co.*, 208 N.W.2d 903 (Iowa 1973). In that case, the supreme court stated that "[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." *Id.* at 906. Reasonable expectations giving rise to application of the doctrine may be established by evidence of the underlying negotiations or may be inferred from the circumstances under which the policy was procured or issued. *Cairns*, 398 N.W.2d 821 (Iowa 1987). Furthermore, the doctrine obligates the fact finder to ignore policy exclusions or other policy language if the exclusion or the language; (1) is bizarre or oppressive; (2) eviscerates terms explicitly agreed to;

or (3) eliminates the dominant purpose of the transaction. *Id.*

We disagree that the doctrine of reasonable expectations is applicable to the facts of this case. Although the Kinneys did offer testimony about Alvin's dealings with two different insurance agents over the course of several years, specifically stating that both men told him that he was covered for "everything other than intentional acts," we find that the record does not support the conclusion that the parties explicitly agreed to any inconsistent terms. Additionally, Charles Rucker, the insurance agent handling the Kinneys' insurance matters at the time the policies were issued, testified that the insurance coverage was needed to actively pursue his construction business. He testified that the general liability insurance and the umbrella policy "... is what contractors usually have to have before they are permitted on the premises of certain industrial firms and so forth. That they must have the coverage before they can get the job." In view of the foregoing, we find that the exclusions in question are reasonable, are not bizarre and oppressive, and do not eliminate the dominant purpose of the transaction.

Furthermore, we also take note of the fact that neither Alvin nor Juanita Kinney read the policy prior to the filing of the underlying lawsuit and we agree with the trial court's following observations:

> It is difficult to understand how he [Kinney] could seek to apply the doctrine of reasonable expectations when, in fact, he did not even read the policies. In this regard, Mr. Kinney suggests he has only an eighth grade education and is not particularly conversant in insurance matters, relying instead on the agents. The Court would have to observe that the record here discloses he is a very successful business man, both in the heavy equipment contracting business and development of mobile home parks. Obviously, a person who accumulates over a million and a half dollars ... must have something more than the ordinary understanding of the conduct of business.

II. The Kinneys also contend that Northwestern is estopped from denying coverage because its letter reserving the right to determine whether coverage existed was not sent until approximately sixty days after Northwestern had "assumed the defense" by securing a lawyer to represent the Kinneys. Stated differently, the Kinneys argue that Northwestern waived its right to deny coverage.

"The essential elements of a waiver are the existence of a right, knowledge, actual or constructive, and an intention to relinquish such right." *Scheetz v. IMT Insurance Co.*, 324 N.W.2d 302, 304 (Iowa 1982). We find that Northwestern did nothing to relinquish its right to deny coverage, and its behavior was in accordance with an insurance company's duties to its insured. *See McAndrews v. Farm Bureau Mutual Insurance Co.*, 349 N.W.2d 117 (Iowa 1984).

AFFIRMED.