## IN THE COURT OF APPEALS OF IOWA

No. 13-1552
Filed September 23, 2015

STATE FARM FIRE AND CASUALTY
COMPANY,
     Plaintiff-Appellee,

vs.

TIM MRZLAK and DAWN MRZLAK,
     Defendants-Appellants.
_____

     Appeal from the Iowa District Court for Grundy County, Joel A. Dalrymple,

Judge.


     The Mrzlaks appeal from the district court's declaratory ruling that there

was no coverage under their insurance policy with State Farm Fire and Casualty

Company.  **AFFIRMED.**


     Carter Stevens of Roberts, Stevens, Prendergast & Guthrie, P.L.L.C.,

Waterloo, for appellants.

     Mark W. Thomas and Laura N. Martino of Grefe & Sidney, P.L.C., Des

Moines, for appellee.


     Considered by Danilson, C.J., and Vaitheswaran and Doyle, JJ.

**DANILSON, Chief Judge.**

Tim and Dawn Mrzlak appeal from the district court's declaratory ruling that there was no coverage under their insurance policy with State Farm Fire and Casualty Company.

**I. Background Facts.**

The Mrzlaks own a manufactured home covered by a State Farm Fire and Casualty Manufactured Home Policy. The policy provides the insurance company will "pay the necessary medical expenses incurred . . . to a person . . . ." However, the insurance policy also provides: "Coverage L and Coverage M do not apply to:"

> (b) bodily injury or property damage arising out of business pursuits of any insured or the rental or holding for rental of any part of any premises by an insured. This exclusion does not apply:
>> (1) to activities which are ordinarily incident to non-business pursuits.
>> (2) with respect to Coverage L to the occasional or part-time business pursuits of an insured who is under 19 years of age;
>> . . . .
> (i) any claim made or suit brought against any insured by:
>> (1) any person who is in the care of any insured because of childcare services provided by or at the direction of:
>>> (a) any insured. . . .
>> (2) any person who makes a claim because of bodily injury to any person who is in the care of any insured because of childcare services provided by or at the direction of:
>>> (a) any insured.
> This exclusion does not apply to the occasional childcare services provided by any insured, or to the part-time childcare services provided by any insured who is under 19 years of age.

During the summer of 2010 the Mrzlaks' daughter, Brittany, provided babysitting services for the children of Bryan Johnson. When Brittany went back to school, Dawn Mrzlak entered into an arrangement to care for the Johnson

children within Bryan's residence on Mondays, Tuesdays, and Thursdays. In addition to caring for the children, Dawn also occasionally performed light housekeeping. From August 2010 through December 2010, Dawn regularly provided the agreed upon services and was compensated by Bryan for her services. The mother of Bryan's children, Jennifer Woodbury,[1] was not living in the residence for most of the period Dawn provided childcare services to the Johnson children. However, "the week before Christmas" Jennifer moved into Bryan's home. Bryan and Dawn discussed Dawn continuing to babysit the children. Specifically, Dawn inquired whether she would continue to have a "job" and if not, she would "need to see about finding another job." On Tuesday, December 28, 2010, Dawn provided childcare to the Johnson children—not at the Johnson residence—but at the Mrzlak residence. Unfortunately, that day the Johnsons' minor daughter was bitten by the Mrzlaks' dog.

A personal injury claim was filed on behalf of the minor and the Mrzlaks sought coverage under their State Farm policy. State Farm filed this declaratory judgment action, asking that the court declare there was no coverage under its policy. The matter was tried to the district court without a jury, after which the court ruled there was no coverage. The Mrzlaks appeal.

**II. Scope and Standard of Review.**

We review a declaratory action tried at law for the correction of legal error. *See Clarke Cnty. Reservoir Comm'n v. Robins*, 862 N.W.2d 166, 171 (Iowa 2015). "'The trial court's findings have the effect of a special verdict and are binding if supported by substantial evidence.'" *Arnevik v. Univ. of Minn. Bd. of*

---

[1] Dawn testified Jennifer was Tim Mrzlak's niece.

*Regents*, 642 N.W.2d 315, 318 (Iowa 2002) (citation omitted). "'Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion.'" *Id.* (citation omitted). "In determining whether substantial evidence exists, we view the evidence in the light most favorable to the district court's judgment." *Chrysler Fin. Co. v. Bergstrom*, 703 N.W.2d 415, 418 (Iowa 2005).

## III. Discussion.

The heart of this dispute concerns the interpretation and application of exclusions in the Mrzlaks' insurance policy. "Determining the legal effect of an insurance policy is a question of law for the court." *Keppler v. Am. Family Mut. Ins. Co.*, 588 N.W.2d 105, 106 (Iowa 1999). "The burden to prove applicability of an exclusion is placed on the insurer." *Moncivais v. Farm Bureau Mut. Ins. Co.*, 430 N.W.2d 438, 440 (Iowa 1988). "The object of contract interpretation is to ascertain from the language 'the intent of the contracting parties at the time the contract was made.'" *Id.* (citation omitted); *see also* Iowa R. App. P. 6.904(3)(n). "The insurer must define clearly and explicitly any limitations or exclusions to coverage expressed by broad promises. When there is no ambiguity, we will not write a new contract of insurance between the parties." *Id.* (internal citation omitted).

Here, State Farm invoked two exclusions: (1) for "bodily injury . . . arising out of business pursuits of any insured" and (2) for "any claim made or suit brought against any insured by . . . any person who is in the care of any insured because of childcare services provided by . . . any insured." The court concluded the insurer had proved both exclusions applied and the exceptions to the exclusions did not.

*A. Childcare exclusion.* Because the childcare exclusion "does not apply to the occasional childcare services provided by any insured" the trial court observed, "The primary issue before the court is whether the circumstances of Tuesday, December 28, 2010, constituted 'occasional child care services' provided by the insured." Because Dawn provided services to the Johnson children "frequently and habitually on a weekly basis," the trial court found the childcare services was not "occasional." This finding is supported by substantial evidence, which is binding upon us. *See Grinnell Mut. Reinsurance Co. v. Voeltz,* 431 N.W.2d 783, 786 (Iowa 1988) ("Because this case was tried to the court, the distinction between interpretation and construction becomes important in relation to our scope of review. When, as here, extrinsic evidence is offered for the interpretation of policy words, the court's interpretation if supported by substantial evidence is binding on us.").

The Mrzlaks argue the exclusion does not apply under the explicit exception stated therein—"This exclusion does not apply to the occasional childcare services provided by any insured[.]" Again the district court disagreed, specifically finding:

> Dawn asserts the Tuesday in question was a planned day off. Despite the previous arrangements, . . . [Jennifer] allegedly made repeated contacts via text messaging in an effort to secure Dawn for childcare purposes. Dawn alleges the text messages were persistent to which she repeatedly responded indicating it was her day off and she was not feeling well. Dawn asserts Jennifer eventually arrived at her residence and dropped the children off without her consent. The [Mrzlaks] claim this particular Tuesday daycare arrangement was different than all other days preceding as this was a favor to Jennifer. The [insurance company] asserts the testimony provided through Bryan Johnson suggests the Tuesday, December 28 childcare arrangements within the Mrzlak home were

due solely to the fact the Johnson household was without cable television.

Dawn asserts she was never paid for the December 28, 2010, services provided; however, the Mrzlaks' and Johnsons' relationship soured as a result of that incident. They have not communicated since. The Court specifically finds any effort on the part of the Mrzlaks to suggest the childcare services rendered on December 28, 2010, as a favor without pay is a subsequent to the incident, self-serving attempt to avoid the result of an exclusion from coverage pursuant to the policy.

Again, there is substantial evidence to support the court's finding, which is binding on this court. *See id.*

*B. Business pursuit exclusion.* The court also found the business pursuit exclusion was applicable. The policy defines "Business" as "mean[ing] a trade, profession or occupation." Prior case law has defined business pursuits:

To constitute a business pursuit, there must be two elements: first, continuity, and secondly, the profit motive; as to the first, there must be a customary engagement or a stated occupation; and, as to the latter, there must be shown to be such activity as a means of livelihood, gainful employment, means of earning a living, procuring subsistence of profit, commercial transaction or engagements.

*Aid (Mut.) Ins. v. Steffen,* 423 N.W.2d 189, 191-92 (Iowa 1988); *see also Moncivais*, 430 N.W.2d at 440 (noting the insured did not dispute her child care activities constituted a business pursuit).

Here, the trial court found, "Despite the relative menial pay, the Court finds the childcare services provided by Mrzlak were continuous and motivated for profit." Substantial evidence also supports this finding. *See id.* We note, too, that Dawn testified that had the dog bite incident not occurred, she believed she would have continued to provide care to the children at their house.

The Mrzlaks assert Dawn's care of the Johnson girls on December 28, 2010, was outside of the arrangement between herself and Johnson and fell

within the exception to the business pursuit exclusion ("This exclusion does not apply: (1) to activities which are ordinarily incident to non-business pursuits . . . ."). The district court rejected this assertion, finding Dawn's testimony that she provided the care on December 28 as a favor to be "self-serving attempt to avoid the result of an exclusion." We find no reason to disturb this finding.[2]

*C. Reasonable expectations.* Finally, the Mrzlaks assert even if State Farm's interpretation of the policy is correct, the doctrine of reasonable expectations mandates coverage. As has been stated on a prior occasion, "The doctrine [of reasonable expectations] is carefully circumscribed and does not contemplate the expansion of coverage on a general equitable basis." *Johnson v. Farm Bureau Mut. Ins. Co.,* 533 N.W.2d 203, 206 (Iowa 1995); *accord Am. Family Mut. Ins. Co. v. Corrigan*, 697 N.W.2d 108, 118 (Iowa 2005). "The doctrine can only be invoked when an exclusion (1) is bizarre or oppressive, (2) eviscerates terms explicitly agreed to, or (3) eliminates the dominant purpose of the transaction." *Corrigan*, 697 N.W.2d at 118 (citation, alterations, and

---

[2] In *Grams v. IMT Insurance Co.*, No. 13-0434, 2014 WL 467795, at *2 (Iowa Ct. App. Feb. 5, 2014), this court affirmed summary judgment for an insurer that sought to invoke a business exclusion provision of a homeowner's policy where a child was bitten while in the care of a person operating an in-home daycare business. The Mrzlaks argue "geographical location played an important role in the holding of the *Grams* case, making it a crucial aspect in determining whether a 'business pursuit' exists." But the policy language at issue in *Grams* made geographical location important: the IMT policy provision stated coverage did not apply to "'Bodily injury' or 'property damage' arising out of or in connection with a 'business' conducted from an '*insured location*' or engaged in by an 'insured', whether or not the 'business' is owned or operated by an 'insured' or employs an 'insured'." *See Grams*, 2014 WL 467795, at *1 (emphasis added). No such language is included in the policy at issue here, and we decline to interpret the policy to include a geographical location.

The Mrzlaks urge Dawn's services on this particular day "are more akin to child-rearing activities of family than childcare." We note there is no exception to the exclusion where the child or children are related to the insured.

internal quotation marks omitted). "Moreover, as a precondition to reliance on this doctrine, an insured must establish that an ordinary layperson would misunderstand the policy coverage or that there are circumstances attributable to the insurer that led the insured to expect coverage." *Id.*

In *Grinnell Mutual*, the trial found the contract's business exclusion[3] was ambiguous, and determined the insureds' had a reasonable expectation of coverage. The *Grinnell Mutual* court wrote:

> Here extrinsic evidence bearing on the meaning of the business pursuit exclusion was offered and received. The district court considered this evidence in interpreting the exclusion to be ambiguous. Our task is to determine whether substantial evidence exists to support the court's interpretation. The operative effect of the exclusion—that is, its construction—still remains a matter of law for our determination.
>    Mindful of the foregoing principles, we have examined the record and conclude that substantial evidence exists to support the court's interpretation. Critical to that interpretation are three documents prepared by Grinnell Mutual. These documents belie the company's contention here that the business pursuit exclusion was not ambiguous.
>    . . . .
>    Referring to these documents, the district court found that as early as 1980 Grinnell Mutual recognized that the definitions and business pursuit exclusion were ambiguous but took no steps to remove the ambiguity from the policy. It is in this context that the agent dealt with the Voeltzes [insureds] in 1984. He had been writing homeowners policies for Grinnell Mutual since 1972. He was well aware of the company's undisclosed interpretation of the business pursuit exclusion as it pertained to baby-sitting activities. Yet when he asked about Tiara's occupation and learned that she baby-sat, he made no further inquiries.

---

[3] The language in the Grinnell Mutual policy read: "We do not cover bodily injury or property damage arising out of business pursuits of an insured person. But, we will cover activities of that person not ordinarily incident to the business pursuits." *Grinnell Mut.*, 431 N.W.2d at 785. The policy defined "business" as "any full or part-time trade, profession, or occupation." *Id.*

431 N.W.2d at 787-88. There, the court contrasted the case to *Moncivais*, in which the supreme court directed judgment in the insurer's favor under a business pursuit exclusion,[4] because in *Grinnell Mutual* there existed "evidence of the Voeltzes' reasonable expectations of coverage and of conduct on the part of the agent fostering such expectations. Consequently, interpretation of the exclusion was a fact question which the district court correctly resolved in favor of the insured." *Id.* at 789.

There was no similar finding of ambiguity in the case before us. The evidence does not reflect the agent fostered any expectations of coverage under these facts. Moreover, Dawn testified at trial,

> Q. Prior to the 28th of December, 2010, had you ever sat down and read through your State Farm policy? A. Yes, I did.
> Q. And did you note in your policy that there was an exclusion for claims based upon childcare services? A. Yes.
> Q. Okay. So was it your understanding then that your childcare services would not be covered by your policy? A. Yes. That's why I did not do childcare in my home.

Because there was no evidence the insureds expected coverage and no circumstances attributable to the insurer which would foster expectations of coverage, the insureds' reasonable-expectations contention is without merit. *See Aid (Mut.) Ins.*, 423 N.W.2d at 192. For all these reasons, we affirm.

**AFFIRMED.**

---

[4] The supreme court explained that in *Moncivais*, 430 N.W.2d at 441-42, "[t]he insured did not dispute that her child day care service, which she had operated for fifteen years, constituted a business pursuit. She relied instead on that portion of the exclusion that excepted activities ordinarily incident to non-business pursuits, which we held did not apply." *Grinnell Mut.*, 431 N.W.2d at 789.